E-FILED
Friday, 15 May, 2009  11:09:37 AM
Clerk, U.S. District Court, ILCD

### AGREEMENT FOR INMATE HEALTH CARE SERVICES
### AT SANGAMON COUNTY, ILLINOIS
### Effective December 1, 2007 through November 30, 2010

This Agreement for Inmate Health Services (hereinafter, the "AGREEMENT") entered into by and between the County of Sangamon, a County in the State of Illinois, (hereinafter, the "COUNTY") acting by and through its duly elected County Board (hereinafter, "BOARD") and Health Professionals, Ltd, (hereinafter, "HPL") an Illinois corporation.

### RECITALS

WHEREAS, the COUNTY and the Sangamon County Sheriff (hereinafter, "SHERIFF") are charged by law with the responsibility for administering, managing, and supervising the health care delivery system of the Sangamon County Jail in Springfield, Illinois, (hereinafter, "JAIL"); and

WHEREAS, the objective of the COUNTY is to provide for the delivery of quality health care to the INMATES and DETAINEES of the JAIL (hereinafter, "JAIL POPULATION"), in accordance with applicable law; and

WHEREAS, HPL is in the business of administering correctional health care services and desires to administer such services on behalf of the COUNTY to the JAIL POPULATION under the terms and conditions hereof.

NOW THEREFORE, in consideration of the covenants and promises hereinafter made, the parties hereto agree as follows:

### DEFINITIONS

CONTRACT YEAR – The initial, and any successive, twelve (12) month period beginning with the effective date of the AGREEMENT.

COUNTY INMATES/DETAINEES – An INMATE/DETAINEE held under the jurisdiction of the COUNTY or SHERIFF. COUNTY INMATES/DETAINEES may be housed in the JAIL or in another jurisdiction's correctional facility. However, COUNTY INMATES/DETAINEES housed in another jurisdiction are not covered by the provisions of this AGREEMENT unless HPL administers health care services at the other jurisdiction's facility and is specifically set forth below.

COVERED PERSONS – An INMATE/DETAINEE of the JAIL who is: (1) part of the JAIL's MADP; and (2) FIT FOR CONFINEMENT; and (3)(a) incarcerated in the JAIL; or (b) on work release status and is in the custody of the JAIL. NOTE: COVERED PERSONS include OUT-OF-COUNTY INMATES/DETAINEES for purposes of delivery of basic health care services, however, the cost of certain services provided to OUT-OF-COUNTY INMATES/DETAINEES are born by the COUNTY as set forth in Section 5.0.

Defendants 0556
EXHIBIT B

DETAINEE – An adult or juvenile individual whose sentence has not yet been adjudicated and is being held as a pre-trial detainee or other individual held in lawful custody.

FIT FOR CONFINEMENT – A determination made by an HPL authorized physician and/or health-trained JAIL staff that an INMATE/DETAINEE is medically stable and has been medically cleared for acceptance into the JAIL and does not have any injury or illness requiring immediate transportation and treatment at a hospital or similar facility.

HPL CHIEF MEDICAL OFFICER – HPL's Chief physician who is vested with certain decision making duties under this AGREEMENT.

INMATE – An adult or juvenile individual who is being incarcerated for the term of their adjudicated sentence.

MONTHLY AVERAGE DAILY POPULATION (MADP) – The average number of INMATES/DETAINEES housed in the JAIL on a daily basis for the period of one month. The MADP shall include, but separately list, OUT-OF-COUNTY INMATES/DETAINEES. The MADP shall be figured by summing the daily population for the JAIL and OUT-OF-COUNTY INMATES/DETAINEES (as determined by a count performed at the same time each day) for each day of the month and dividing this sum by the total number of days in the month. JAIL records shall be made available to HPL upon request to verify the MADP. Persons on home confinement, housed outside of the JAIL, and parolees and escapees shall not be considered part of the JAIL's MADP.

NCCHC – The National Commission on Correctional Health Care.

OUT-OF-COUNTY INMATE/DETAINEE – An INMATE/DETAINEE under the jurisdiction of another county, state or federal agency, being housed in the JAIL.

SPECIALTY SERVICES - Medical services that require physicians to be licensed in a specialty such as obstetrics, gynecology, or dermatology or any other specialized field of medicine.

## ARTICLE I
## HEALTH CARE SERVICES

1.0   SCOPE OF SERVICES. HPL shall administer health care services and related administrative services at the JAIL according to the terms and provisions of the AGREEMENT. The costs of the various health care services shall be born by HPL or the COUNTY as set forth in this Article.

1.1   GENERAL HEALTH CARE SERVICES. HPL will arrange and bear the cost of the following health care services:

   1.1.1 ASSESSMENT. Health assessment of a COVERED PERSON as soon as possible, but no later than 14 calendar days after the

Defendants 0557

    INMATE/DETAINEE's arrival at the JAIL. The health assessment shall follow current NCCHC guidelines.

  1.1.2 SCHEDULED SICK CALL. A qualified healthcare professional shall conduct sick calls for COVERED PERSONS on a timely basis and in a clinical setting. A physician will be available to see COVERED PERSONS at least once per week.

1.2 AMBULANCE SERVICE. HPL shall arrange and bear the cost of emergency ambulance services for COVERED PERSONS. Costs for such ambulance services shall be included in the cap listed in Section 1.6.

1.3 BODY CAVITY SEARCHES/COLLECTION OF PHYSICAL EVIDENCE. HPL HEALTH CARE STAFF will not perform body cavity searches, nor collect physical evidence (blood, hair, semen, saliva, etc.), except within guidelines established by the NCCHC. If HPL HEALTH CARE STAFF collect physical evidence, the COUNTY shall be responsible for arranging any testing and bear the cost of collection and testing the collected evidence. After collecting evidence, HPL HEALTH CARE STAFF shall turn the specimen over to the SHERIFF or a court-designated representative for completion of chain-of-custody evidence.

1.4 DENTAL – NOT COVERED. HPL shall not be responsible for the provision or cost of any dental services. In the event that the JAIL POPULATION requires dental services, the COUNTY shall bear the cost.

1.5 ELECTIVE MEDICAL CARE – NOT COVERED. HPL shall not be responsible for the provision or cost of any elective care. In the event a member of the JAIL POPULATION requires elective care, the INMATE/DETAINEE or COUNTY shall be responsible for all costs. Elective medical care shall be defined as care which, if not provided, would not, in the sole opinion of HPL's CHIEF MEDICAL OFFICER, cause the INMATE/DETAINEE'S health to deteriorate or cause harm to the INMATE/DETAINEE'S well being. Decisions concerning elective medical care shall be consistent with the applicable American Medical Association (AMA) Standards.

1.6 HOSPITALIZATION. HPL will arrange and bear the cost of hospitalization for a COVERED PERSON who, in the opinion of the treating physician and/or HPL's CHIEF MEDICAL OFFICER, requires hospitalization. HPL shall be responsible for hospital costs with an annual aggregate cap of $50,000 per CONTRACT YEAR.

1.7 LONG TERM CARE – NOT COVERED. HPL shall not be responsible for the provision or cost of any long term care facility services. In the event that a member of the JAIL POPULATION requires skilled care, custodial care or other services of a long term care facility, the COUNTY shall bear the cost.

Defendants 0558

1.8 MEDICAL EQUIPMENT OVER $100. In the event that the Parties mutually agree that medical equipment in excess of $100 per unit cost is required to assist in providing health care services to COVERED PERSONS under this AGREEMENT, the COUNTY shall bear the cost of such equipment.

1.9 MEDICAL SUPPLIES/EQUIPMENT UNDER $100. HPL shall provide and bear the costs for medical supplies (i.e. alcohol prep pads, syringes, etc.) and equipment (i.e. thermometers, scales, pulse ox testers, etc.) required to administer the terms of the AGREEMENT, which have a unit cost of $100 or less, but does not include office and paper supplies.

1.10 MEDICAL WASTE. HPL shall bear the cost of removing and properly disposing of medical waste material generated while fulfilling its duties under this AGREEMENT in accordance with all applicable state laws and OSHA-regulated standards.

1.11 MENTAL HEALTH. HPL shall arrange and bear the cost of mental health services for COVERED PERSONS which shall include intake, post admission evaluation, counseling and suicide prevention.

1.12 OFFICE SUPPLIES AND EQUIPMENT – NOT COVERED. HPL shall not be responsible for the provision or cost of any office supplies or office equipment. The COUNTY shall be responsible for providing office supplies and office equipment, such as copier, fax and phone service as required for the administrative operations of the medical unit.

1.13 PATHOLOGY/RADIOLOGY SERVICES. HPL shall arrange and bear the cost of all pathology and radiology services (also referred to as laboratory and x-ray services) for COVERED PERSONS. HPL shall arrange on-site pathology and radiology services to the extent reasonably possible. To the extent pathology and radiology services are required and cannot be rendered on-site, HPL shall make appropriate off-site arrangements for rendering such care. HPL will arrange and coordinate with the Sheriff's office the transportation for the provisions of such services off-site.

1.14 PHARMACY SERVICES. HPL shall provide monitoring of pharmacy usage as well as development of a preferred drug list. Except as provided below, HPL shall bear the cost of all prescription and non-prescription over-the-counter medications prescribed by a duly licensed HPL physician for a COVERED PERSON. EXCEPTION: HPL shall only bear the cost of HPL physician approved non-prescription over-the-counter medication issued to COVERED PERSONS from OUT-OF-COUNTY and the COUNTY shall bear the cost of all prescription medications issued to COVERED PERSONS from OUT-OF-COUNTY.

Defendants 0559

1.14.1 GENERAL. Prescribing, dispensing, and administering of medication shall comply with all State and Federal laws and regulations and all medications shall be dispensed under the supervision of a duly authorized, appropriately licensed or certified health care provider.

1.14.2 LIMITS. HPL shall bear the cost of prescription medication related to the treatment of Acquired Immune Deficiency Syndrome ("AIDS"), Human Immuno-deficiency Virus ("HIV"), Hepatitis C and Biologicals up to $1,200 per CONTRACT YEAR in the aggregate. Medications related to the treatment of AIDS, HIV, Hepatitis C and Biologicals shall be defined in accordance with the Physician's Desk Reference.

1.14.3 PSYCHOTROPIC MEDICATIONS. Psychotropic medications prescribed by physicians not affiliated with HPL must be approved by an HPL licensed physician. HPL shall bear the cost of psychotropic medications prescribed or approved by a duly licensed HPL physician. Responsibility for payment of psychotropic medications which are not on the preferred drug list is subject to the Utilization Review process.

1.15 PREGNANT COVERED PERSONS. HPL shall arrange and bear the cost of health care services for any pregnant COVERED PERSON in accordance with NCCHC standards and this AGREEMENT, but HPL shall not arrange or bear the cost of any health care services for infants.

1.16 SPECIALTY SERVICES. In the event it is determined that a COVERED PERSON requires SPECIALTY SERVICES, HPL shall arrange and bear the cost of such services. HPL's authorized physician will make such determination and refer COVERED PERSONS for SPECIALTY SERVICES when, in the physician's professional opinion, it is deemed medically necessary. HPL's authorized personnel will make a recommendation and obtain approval from the SHERIFF's office for SPECIALTY SERVICES prior to making arrangements for such services. HPL shall arrange on-site SPECIALTY SERVICES to the extent reasonably possible. To the extent SPECIALTY SERVICES are required and cannot be rendered on-site, HPL shall make appropriate off-site arrangements for rendering such care. In the event that SPECIALTY SERVICES are rendered off-site but do not require hospitalization, HPL will arrange and bear the cost only if the HPL CHIEF MEDICAL OFFICER approves such SPECIALTY SERVICES. Costs for SPECIALTY SERVICES shall be included in the cap listed in Section 1.6.

1.17 VISION CARE – NOT COVERED. HPL shall not be responsible for the provision of eyeglasses or any other vision services other than care for eye injuries or diseases. In the event that any COVERED PERSON requires vision services, including an ophthalmologist's services, the COUNTY shall bear the cost of such vision or eye care services.

Defendants 0560

## ARTICLE II
## HEALTH CARE STAFF

2.0 STAFFING HOURS. HPL shall provide medical, and mental health (hereinafter "HEALTH CARE STAFF") necessary to render the health care services contemplated in Article I as set forth below:

    2.0.1 Up to 4 hours per week of Physician services to be assigned by HPL.

    2.0.2 Up to 4 hours per week of Psychiatrist services to be assigned by HPL.

    2.0.3 Additional hours may be provided if mutually agreed upon by both parties in writing, with at least 24 hours advanced notice;

    2.0.4 HPL shall provide an on-call psychiatrist, physician and/or nurse 24 hours per day and 7 days per week.

    2.0.5 The JAIL will be provided the total amount of hours listed in sections 2.0.1 through 2.0.5. Said hours may be re-allocated and subject to change as determined by mutual agreement of the SHERIFF and HPL, but shall in all respects be consistent with the medical recommendations of HPL's licensed physician.

2.1 STAFFING LEVELS WAIVER. Based on actual staffing needs as affected by medical emergencies, riots, increased or decreased INMATE/DETAINEE population, and other unforeseen circumstances, certain increases or decreases in staffing requirements may be waived as agreed to by the SHERIFF and HPL.

2.2 LICENSURE, CERTIFICATION, AND REGISTRATION OF HEALTH CARE STAFF. All HEALTH CARE STAFF shall be licensed, certified or registered, as appropriate, in their respective areas of expertise pursuant to applicable state law and as required by NCCHC guidelines. (If Required by NCCHC Accreditation.)

2.3 STAFFING CHANGES. HPL shall not make HEALTH CARE STAFF changes without prior notice to the SHERIFF.

2.4 STAFF SCREENING. The COUNTY and SHERIFF shall screen HPL's proposed HEALTH CARE STAFF, employees, agents and/or subcontractors providing services at the JAIL to insure they do not constitute a security risk. The SHERIFF shall have final approval of HPL's HEALTH CARE STAFF, employees, agents and/or subcontractors in regards to security/background clearance.

2.5 SATISFACTION WITH HEALTH CARE STAFF, employees, agents and/or subcontractors. In recognition of the sensitive nature of correctional services, if the SHERIFF becomes dissatisfied with any member of the HEALTH CARE STAFF, employees, agents and/or subcontractors, the SHERIFF shall provide

Defendants 0561

HPL written notice of such dissatisfaction and the reasons therefore. Following receipt of such notice, HPL shall use commercially reasonable efforts to resolve the dissatisfaction. If the problem is not resolved to the satisfaction of the SHERIFF within ten (10) business days following HPL's receipt of the notice, HPL shall remove the individual from providing services at the JAIL within a reasonable time frame considering the effects of such removal on HPL's ability to deliver health care services and recruitment/hiring of an acceptable replacement. The SHERIFF reserves the right to revoke the security clearance of any HPL HEALTH CARE STAFF, employees, agents and/or subcontractors at any time. In the event said HPL staff, employees, agents and/or subcontractors has their security clearance revoked based on security issues, HPL shall immediately, as practicable, provide an equal number of screened replacement staff, employees, agents and/or subcontractors.

## ARTICLE III
## ADMINISTRATIVE SERVICES

3.0   HEALTH EDUCATION AND TRAINING. HPL shall conduct an ongoing health education and training program for the COUNTY Deputies and JAIL employees in accordance with education and training requirements of State of Illinois statutes, rules and regulations, and standards as well as the needs mutually established by the COUNTY and HPL.

3.1   QUARTERLY REPORTS. HPL shall submit quarterly health care reports to the SHERIFF, or his designee, concerning the overall operation of the health care services program rendered pursuant to this AGREEMENT and the general health of the JAIL POPULATION.

3.2   QUARTERLY MEETINGS. HPL shall meet quarterly, or as soon thereafter as possible, with the SHERIFF, or his designee, concerning procedures within the JAIL and any proposed changes in health-related procedures or other matters, which both parties deem necessary.

3.3   MEDICAL RECORDS MANAGEMENT. HPL shall provide the following medical records management services:

    3.3.1   MEDICAL RECORDS. HPL shall maintain, cause or require the maintenance of complete and accurate medical records for COVERED PERSONS who have received health care services. The medical records shall be kept separate from the COVERED PERSON'S confinement record. A complete original of the applicable medical record shall be available to accompany each COVERED PERSON who is transferred from the JAIL to another location for off-site services or transferred to another institution. HPL will keep medical records confidential and shall not release any information contained in any medical record except as required by published JAIL policies, by a court order or by applicable law.

Defendants 0562

Upon termination of this AGREEMENT, all medical records shall be delivered to and remain with the SHERIFF, as property of the SHERIFF's office.

3.3.2 COMPLIANCE WITH LAWS. Each medical record shall be maintained in accordance with the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), and any other applicable state or federal privacy statute or regulation.

3.3.3 RECORDS AVAILABILITY. HPL shall make available to the SHERIFF or COUNTY, unless otherwise specifically prohibited, at the SHERIFF's or COUNTY's request, all records, documents and other papers relating to the direct delivery of health care services to the Jail Population hereunder.

## ARTICLE IV
## PERSONS COVERED UNDER THIS AGREEMENT

4.0 GENERAL. Except as otherwise provided in this AGREEMENT, HPL shall only be required to arrange for services under this AGREEMENT to be provided to COVERED PERSONS.

4.1 EMERGENCY MEDICAL CARE FOR JAIL EMPLOYEES AND VISITORS. HPL shall arrange for on-site first response emergency medical care as required for JAIL employees, contractors and visitors to the JAIL. The medical treatment shall be limited to the extent reasonably necessary to stabilize and facilitate the individual's referral to a medical facility or personal physician.

4.2 RELEASE FROM CUSTODY. The COUNTY acknowledges and agrees that HPL is responsible for the payment of costs associated with services rendered to COVERED PERSONS as set forth in this AGREEMENT only when such persons remain in the custody of, or under the jurisdiction of, the JAIL. In no event shall HPL be responsible for payment of any costs associated with any services rendered to any individual when said individual is released from the custody of and is no longer under the jurisdiction of, the JAIL including, but not limited to, releasees, parolees and escapees. Furthermore, in the circumstance where a third party payor (such as insurance) is available, HPL shall not be responsible for payment of costs associated with any medical services rendered to a COVERED PERSON when said COVERED PERSON is injured outside the JAIL facility during transport to or from the JAIL.

## ARTICLE V
## PERSONS NOT COVERED OR PARTIALLY COVERED UNDER THIS AGREEMENT

5.0 OUT-OF-COUNTY INMATES/DETAINEES. HPL shall only be responsible for arranging sick call, over-the counter medications, medical supplies and medical waste services for OUT-OF-COUNTY INMATES/DETAINEES. The cost of all

Defendants 0563

prescription medication and all other health care expenses shall be paid by the agency responsible for the OUT-OF-COUNTY INMATE/DETAINEE, including those services listed in Article I of this AGREEMENT and all other medically-related expenses associated with OUT-OF-COUNTY INMATES/DETAINEES.

5.1 COUNTY INMATES/DETAINEES HOUSED IN OTHER JURISDICTIONS OR OUTSIDE THE JAIL. HPL shall not be responsible for arranging the medical care or treatment for COUNTY INMATES/DETAINEES housed in other counties or jurisdictions. The COUNTY or SHERIFF or other agency with legal responsibility for the medical care of such persons shall be responsible for all medical expenses associated with the care and treatment of COUNTY INMATES/DETAINEES removed from the Jail, including, but not limited to the services listed in Article I of this AGREEMENT and any other medically-related expenses associated with said INMATES/DETAINEES, unless the INMATE/DETAINEE is housed in a facility where HPL provides INMATE/DETAINEE health care services. HPL shall not be responsible for arranging the medical care or treatment for COUNTY INMATES/DETAINEES housed outside the JAIL or for injuries sustained by work release INMATES/DETAINEES while on work release outside the JAIL, however, HPL shall provide necessary medical care as provided in this AGREEMENT to work release INMATES/DETAINEES when housed in the JAIL.

5.2 INJURIES PRIOR TO INCARCERATION, FIT FOR CONFINEMENT AND ESCAPED INMATES/DETAINEES. HPL shall not be responsible for the cost of providing off-site medical care for injuries incurred by an INMATE/DETAINEE prior to being declared FIT FOR CONFINEMENT at the JAIL or after an escape, including medical services provided to any INMATE/DETAINEE prior to the INMATE/DETAINEE's booking and commitment into the JAIL. Once determined to be FIT FOR CONFINEMENT, HPL shall be responsible for the medical care of the INMATE/DETAINEE under the terms of this AGREEMENT. In addition, HPL shall not be responsible for the cost of any medical treatment or health care services necessary to medically stabilize any arrested person presented at intake by an arresting agency with a life threatening injury or illness or in immediate need of emergency medical care. HPL shall provide such care as is medically necessary until the arrested person can be transported to a medical care facility by the arresting agency or their designee. The arresting authority shall bear the cost of, and be responsible for, all reasonable and necessary medical services or health care services of the individual until such time as the arresting authority can present a medically stable individual that is FIT FOR CONFINEMENT. To the extent HPL is billed for medical services provided to an individual who is not FIT FOR CONFINEMENT, the arresting authority shall reimburse HPL for all such costs. HPL shall not charge an additional fee simply to examine an individual to determine if he is suitably FIT FOR CONFINEMENT.

Defendants 0564

## ARTICLE VI
## COST OF SERVICES NOT COVERED UNDER THIS AGREEMENT

6.0 SERVICES NOT LISTED. Both parties understand and agree that there will be costs incurred for health care related services as outlined in Articles I, II and III above. HPL shall not be responsible for any expenses not specifically covered under Articles I, II and III of this Agreement. In the event that any of the health care services not covered by HPL under Articles I, II and III, or any services that are not listed within this AGREEMENT, are required for a member of the JAIL POPULATION as a result of the medical judgment of a physician or HPL authorized personnel, HPL shall not be responsible for arranging such services and the cost of such services shall be billed directly to the COUNTY.

6.1 SERVICES BEYOND THE SCOPE OF THE AGREEMENT. Both parties further understand and agree that there are certain occurrences, both beyond the control and within the control of the parties, that may result in health care expenses which are outside the scope of the normal operation of a correctional facility and, therefore, outside the contemplated scope of services under this AGREEMENT. While both parties will act in good faith and endeavor to reduce the possibility of such occurrences, in the unlikely event of an occurrence such as an Act of God, riot, explosion, fire, food poisoning, epidemic illness outbreak or any other catastrophic event, or an event caused by the action or inaction of the COUNTY or SHERIFF or their employees, agents or contractors, which results in medical care for the JAIL POPULATION, JAIL staff, visitors, or contractors, HPL shall not be responsible for costs attributable to such catastrophic event and all such costs shall be born by the COUNTY. Notwithstanding the above, HPL shall be responsible for medical costs associated with such an event only if such an event was caused solely by HPL.

## ARTICLE VII
## COUNTY'S DUTIES AND OBLIGATIONS

7.0 COMPLIANCE WITH HIPAA. The COUNTY and its agents shall comply with the Health Insurance Portability and Accountability Act of 1996 (hereinafter HIPAA). The COUNTY and the SHERIFF shall implement regulations in compliance with HIPAA.

7.1 COMPREHENSIVE MEDICAL/MENTAL HEALTH CARE. HPL shall identify to the SHERIFF those members of the JAIL POPULATION with medical or mental health conditions which may be worsened as a result of being incarcerated at the JAIL or which may require extensive care while incarcerated. After review of the circumstances, and when security risks permit, the SHERIFF shall make every effort to have those inmates released or transferred on their own recognizance.

Defendants 0565

7.2  RECORD ACCESS. During the term of this AGREEMENT, and for a reasonable time following the termination of this AGREEMENT, the SHERIFF shall provide HPL, at HPL's request, the COUNTY, JAIL and/or SHERIFF'S records (including medical records) relating to the provision of health care services to the JAIL POPULATION, including records maintained by hospitals, and other outside health care providers involved in the care or treatment of the JAIL POPULATION (to the extent the COUNTY, JAIL or SHERIFF has control of, or access to, such records). HPL may request such records in connection with the investigation of, or defense of, any claim by a third party related to HPL's conduct or to prosecute a claim against a third party. Any such information provided by the SHERIFF to HPL that the SHERIFF considers confidential shall be kept confidential by HPL and shall not, except as may be required by law, be distributed to any third party without prior written approval by the SHERIFF.

7.3  USE OF INMATES/DETAINEES IN THE PROVISION OF HEALTH CARE SERVICES. INMATES/DETAINEES of the JAIL shall not be employed or otherwise engaged or utilized by either HPL or the SHERIFF in rendering any health care services to the JAIL POPULATION; provided however, that INMATES/DETAINEES may be used in positions not involving the rendering of health care services directly to the JAIL POPULATION and not involving access to JAIL POPULATION records in accordance with NCCHC standards.

7.4  SECURITY OF THE JAIL FACILITY AND HPL. HPL and the COUNTY understand that adequate security services are necessary for the safety of the agents, employees, and subcontractors of HPL, as well as for the security of the JAIL POPULATION and SHERIFF'S staff, consistent with a correctional setting. The SHERIFF shall provide security sufficient to enable HPL, its HEALTH CARE STAFF, employees, agents and/or subcontractors to safely provide the health care services described in this AGREEMENT. HPL, its HEALTH CARE STAFF, employees, agents and/or subcontractors shall follow all security procedures of the SHERIFF while at the JAIL or other premises under the SHERIFF's direction or control. However, any HPL HEALTH CARE STAFF, employee, agent and/or subcontractor may, at any time, refuse to provide any service required under this AGREEMENT if such person reasonably concludes, given the inherent nature of jail operations, that the current safety services are insufficient. JAIL staff shall be notified immediately of such conclusion. HPL shall not be liable for any loss or damages resulting from HPL's HEALTH CARE STAFF, employees, agents and/or subcontractors failure to provide medical services due to insufficient security services.

7.5  SHERIFF'S POLICIES AND PROCEDURES. HPL, its HEALTH CARE STAFF, employees, agents and/or subcontractors shall operate within the requirements of the COUNTY'S and/or SHERIFF'S posted Policies and Procedures, which directly relate to the provision of medical services.

Defendants 0566

7.5.1  A complete set of said Policies and Procedures shall be maintained by the COUNTY to be made available for inspection at the Jail, and HPL may make a reasonable number of copies of any specific section(s) it wishes using the SHERIFF'S photocopy equipment and paper.

7.5.2  Any Policy or Procedure that may impact the provision of health care services to the JAIL POPULATION which has not been made available to HPL shall not be enforceable against HPL unless otherwise agreed upon by both parties.

7.5.3  Any modification of the posted Policies and Procedures shall be timely provided to HPL. HPL, its HEALTH CARE STAFF, employees, agents and/or subcontractors shall operate within the requirement of a modified Policy or Procedure after such modification has been made available to HPL.

7.6  DAMAGE TO EQUIPMENT. HPL shall not be liable for loss of or damage to equipment and supplies of HPL, its agents, employees or subcontractors if such loss or damage was caused by the sole negligence of the COUNTY and/or SHERIFF's employees.

7.7  SECURE TRANSPORTATION. The SHERIFF shall provide security as necessary and appropriate in connection with the transportation of a member of the JAIL POPULATION to and from off-site services including, but not limited to, SPECIALTY SERVICES, hospitalization, pathology and radiology services as requested by HPL. HPL shall coordinate with the SHERIFF's office for transportation to and from the off-site services provider or hospital.

7.8  OFFICE EQUIPMENT AND SUPPLIES. SHERIFF shall provide use of COUNTY-owned office equipment, supplies and all necessary utilities (including telephone and fax line service) in place at the JAIL health care facilities. At the termination of this AGREEMENT, HPL shall return to the COUNTY possession and control of all COUNTY-owned medical and office equipment. At such time, the office equipment shall be in good working order, reasonable wear and tear excepted.

7.9  NON-MEDICAL CARE OF JAIL POPULATION. It is understood that the SHERIFF shall provide for all the non-medical personal needs and services of the JAIL POPULATION as required by law. HPL shall not be responsible for providing, or liable for failing to provide, non-medical services to the JAIL POPULATION including, but not limited to: daily housekeeping services, dietary services, building maintenance services, personal hygiene supplies and services and linen supplies.

7.10  JAIL POPULATION INFORMATION. In order to assist HPL in providing the best possible health care services to COVERED PERSONS, the SHERIFF shall

Defendants 0567

provide, as needed, information pertaining to the COVERED PERSON that HPL and the SHERIFF mutually identify as reasonable and necessary for HPL to adequately to perform its obligations under this AGREEMENT.

### ARTICLE VIII
### COMPENSATION/ADJUSTMENTS

8.0 ANNUAL AMOUNT/MONTHLY PAYMENTS. The annual amount to be paid by the COUNTY to HPL under this AGREEMENT is $268,481.92 (Two Hundred Sixty-Eight Thousand Four Hundred Eighty-One Dollars and ninety two cents) for a period of 12 (twelve) months. Each monthly payment shall be at $22,373.49 (Twenty-Two Thousand Three Hundred Seventy-Three Dollars and forty-nine cents). The first monthly amount is to be paid to HPL on the 1st December, 2007 for services provided in the month of December, 2007. Each monthly payment thereafter is to be paid by the COUNTY to HPL before or on the 1st day of the month of the month of service. If a separate contract encompassing these services is agreed to by both parties, the monthly amount will be pro rated per day.

Year 2. Effective December 2008, the base annual amount to be paid by the COUNTY to HPL in Year 2 shall be the annual amount of Year 1, plus an increase of 3.0%

Year 3. Effective December 2009, the base annual amount to be paid by the COUNTY to HPL in Year 3 shall be the annual amount of Year 2, plus an increase of 3.5% or based on the average Consumer Price Index for medical services for the twelve (12) month period prior to the renewal proposal whichever is less.

8.1 ANNUALIZED AMOUNT OF INCREASE UPON RENEWAL. Upon each contractual renewal of this AGREEMENT pursuant to Section 9.0, the increase in the annualized amount shall be negotiated between the parties at least 30 days prior to the end of the Term of the Agreement.

8.2 ADJUSTMENT FOR MONTHLY AVERAGE DAILY POPULATION. The quarterly reconciliation shall be based on the MADP of 367 INMATES/DETAINEES. If the MADP is greater than 367, the compensation payable to HPL by the COUNTY for that month shall be increased by a per diem rate of $1.57 for each INMATE/DETAINEE. If the MADP is less than 367 for each facility, then the compensation payable to HPL by the COUNTY for that month shall be decreased by a per diem rate of $1.57 per INMATE/DETAINEE. HPL shall provide the COUNTY with the per diem adjustment on a quarterly basis.

8.3 HPL reserves the right to evaluate and recommend staffing changes to be mutually agreed upon by both parties.

Defendants 0568

## ARTICLE IX
## TERM AND TERMINATION

9.0   TERM. The term of this AGREEMENT shall be three (3) years from December 1, 2007 at 12:01 a.m. through November 30, 2010 at 11:59 p.m. This AGREEMENT shall automatically renew for additional one year periods on December 1st of each subsequent year with mutually agreed upon increases, unless this AGREEMENT is terminated or notice of termination is given, as set forth in this Article.

9.1   TERMINATION FOR LACK OF APPROPRIATIONS. It is understood and agreed that this AGREEMENT shall be subject to annual appropriations by the County Board of the COUNTY.

   9.1.1   Recognizing that termination for lack of appropriations may entail substantial costs for HPL, the COUNTY and the SHERIFF shall act in good faith and make every effort to give HPL reasonable advance notice of any potential problem with funding or appropriations.

   9.1.2   If future funds are not appropriated for this AGREEMENT, and upon exhaustion of existing funding, the COUNTY and SHERIFF may terminate this AGREEMENT without penalty or liability, by providing a minimum of thirty (30) days advance written notice to HPL.

9.2   TERMINATION DUE TO HPL'S OPERATIONS. The COUNTY reserves the right to terminate this AGREEMENT immediately upon written notification in the event that HPL discontinues or abandons operations, is adjudged bankrupt or is reorganized under any bankruptcy law, or fails to keep in force any required insurance policies. Both parties agree that termination under this provision will be considered without cause.

9.3   TERMINATION FOR CAUSE. The AGREEMENT may be terminated for cause under the following provisions:

   9.3.1   TERMINATION BY HPL. Failure of the COUNTY and/or SHERIFF to comply with any provision of this AGREEMENT shall be considered grounds for termination of this AGREEMENT by HPL upon sixty (60) days advance written notice to the COUNTY specifying the termination effective date and identifying the "basis for termination." The COUNTY shall pay for services rendered up to the date of termination of the AGREEMENT. Upon receipt of the written notice, the COUNTY shall have ten (10) days to provide a written response to HPL. If the COUNTY provides a written response to HPL which provides an adequate explanation for the "basis for termination" and the COUNTY cures the "basis for termination" to the satisfaction of the HPL, the sixty (60) day notice shall become null and void and this AGREEMENT will remain in

Defendants 0569

full force and effect. Termination under this provision shall be without penalty to HPL.

  9.3.2 TERMINATION BY COUNTY. Failure of HPL to comply with any provision of this AGREEMENT shall be considered grounds for termination of this AGREEMENT by the SHERIFF or the COUNTY who shall provide sixty (60) days advanced written notice specifying the termination effective date and identifying the "basis for termination." The COUNTY shall pay for services rendered up to the date of termination of the AGREEMENT. Upon receipt of the written notice HPL shall have ten (10) days to provide a written response to the COUNTY. If HPL provides a written response to the COUNTY which provides an adequate explanation for the "basis of termination," or cures the "basis for termination" to the satisfaction of the SHERIFF, the sixty (60) day notice shall become null and void and this contract will remain in full force and effect. Termination under this provision shall be without penalty to the SHERIFF or the COUNTY.

9.4 TERMINATION WITHOUT CAUSE. Notwithstanding anything to the contrary contained in this AGREEMENT, the SHERIFF, the COUNTY or HPL may, without prejudice to any other rights it may have, terminate this AGREEMENT for their convenience and without cause by giving ninety (90) days advance written notice to the other party.

9.5 COMPENSATION UPON TERMINATION. If any of the above termination clauses are exercised by any of the parties to this AGREEMENT, HPL shall be paid by the COUNTY for all services rendered by HPL up to the date of termination of the AGREEMENT regardless of the COUNTY'S failure to appropriate funds.

## ARTICLE X
## LIABILITY AND RISK MANAGEMENT

10.0 INSURANCE COVERAGE. HPL shall, at its sole cost and expense, procure and maintain during the term of this AGREEMENT, the following coverage and limits of insurance:

  10.0.1 MALPRACTICE/PROFESSIONAL LIABILITY. Malpractice/Professional Liability insurance in an amount not less than $1,000,000 per occurrence and $3,000,000 in the aggregate.

  10.0.2 COMPREHENSIVE GENERAL LIABILITY. Comprehensive General Liability insurance in an amount not less than $1,000,000 per occurrence and $3,000,000 in the aggregate.

Defendants 0570

        10.0.3 WORKER'S COMPENSATION. Worker's Compensation coverage as required by applicable State law.

10.1 ENDORSEMENTS. The Comprehensive General Liability policy shall contain additional endorsements naming the JAIL as an additional insured with respect to liabilities arising out of the performance of services under this AGREEMENT.

10.2 PROOF OF INSURANCE. HPL shall provide the COUNTY proof of professional liability or medical malpractice coverage for HPL's HEALTH CARE STAFF, employees, agents and subcontractors, for the term services are provided under this AGREEMENT. HPL shall promptly notify the SHERIFF, in writing, of each change in coverage, reduction in policy amounts or cancellation of insurance coverage. If HPL fails to provide proof of adequate insurance within a reasonable time under the circumstances, then the COUNTY shall be entitled to terminate this AGREEMENT without penalty to the COUNTY or the SHERIFF pursuant to the terms of Article VIII.

10.3 INDEMNIFICATION. HPL shall be responsible for claims resulting from negligent conduct by HPL, its employees, agents, or subcontractors while performing its duties under this AGREEMENT and shall indemnify and hold harmless the COUNTY and SHERIFF and their employees, agents, and subcontractors for such claims. If a claim is brought against the COUNTY, JAIL or SHERIFF relating to the negligent performance by HPL, its employees, agents, or subcontractors of its duties under this AGREEMENT, the COUNTY, JAIL or SHERIFF shall promptly notify HPL of such claim. HPL shall take all steps necessary to promptly defend and protect the COUNTY, JAIL and SHERIFF including the retention of defense counsel. However, HPL shall not be responsible for any claims arising out of: (1) the COUNTY, JAIL or SHERIFF or their employees' or agents' intentionally preventing any persons from receiving medical care ordered by HPL its HEALTH CARE STAFF, employees, agents, or subcontractors; or (2) the negligence of the COUNTY, JAIL or SHERIFF or their employees or agents in promptly presenting an ill or injured person to HPL for treatment if it should have been obvious to a non-medical individual that the person was in serious need of immediate medical attention; or (3) the COUNTY, JAIL or SHERIFF or their employees' or agents' breach of this AGREEMENT.

10.4 HIPAA. HPL, the COUNTY, JAIL, and SHERIFF and their employees, agents and subcontractors shall fully comply with, and shall implement all necessary regulations in order to comply with, the requirements of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") as it applies to the services provided under this AGREEMENT. The COUNTY, JAIL and SHERIFF and their employees and agents shall indemnify and hold harmless HPL from and against any claims of any kind made as a result of alleged or actual violations of HIPAA by the COUNTY, the SHERIFF and their employees, agents and subcontractors, unless such claims are proven to be caused by the sole negligence or willful misconduct of HPL.

Defendants 0571

10.5 SURVIVABILITY. The obligations under this Article X shall survive the termination of this AGREEMENT.

## ARTICLE XI
## MISCELLANEOUS

11.0 INDEPENDENT CONTRACTOR STATUS. It is mutually understood and agreed, and it is the intent of the parties hereto that an independent contractor relationship be and is hereby established under the terms and conditions of this AGREEMENT. Nothing in this AGREEMENT shall be construed to create an agency relationship, an employer/employee relationship, a joint venture relationship, or any other relationship allowing the COUNTY or SHERIFF to exercise control or direction over the manner or methods by which HPL, its employees, agents or subcontractors perform hereunder, or HPL to exercise control or direction over the manner or methods by which the COUNTY or the SHERRIFF, and their employees, agents or subcontractors perform hereunder, other than as provided in this AGREEMENT. HPL assumes all financial responsibility for the employees of HPL, such as workers compensation, unemployment insurance, wages, withholding taxes, social security, sales and other taxes that may be directly or indirectly related to the services to be provided under this AGREEMENT.

11.1 SUBCONTRACTING. In order to discharge its obligations hereunder, HPL may engage certain physicians as independent contractors rather than employees ("Contract Professionals"). HPL shall not engage any Contract Professional that does not meet the applicable professional licensing requirements and HPL shall exercise administrative supervision over such Contract Professionals as necessary to insure the strict fulfillment of the obligations contained in this AGREEMENT. As the relationship between HPL and these Contract Professionals will be that of independent contractor, HPL will not be considered or deemed to be engaged in the practice of medicine. Services provided by Contract Professionals under this AGREEMENT shall be provided in a manner reasonably consistent with the independent medical judgment the Contract Professional is required to exercise.

11.2 EQUAL EMPLOYMENT OPPORTUNITY. HPL will not discriminate against any employee or applicant for employment because of race, color, religion, sex, ancestry, national origin, place of birth, marital status, sexual orientation, age or handicap unrelated to a bona fide occupational qualification of the position or because of status as a disabled veteran or Vietnam-Era veteran. HPL will distribute copies of its commitment not to discriminate to all persons who participate in recruitment, screening, referral and selection of job applicants, and to prospective job applicants.

11.3 ENTIRE AGREEMENT. This AGREEMENT constitutes the entire agreement of the parties and is intended as a complete and exclusive statement of the promises, representations, negotiations, discussions and agreements that have been made in

Defendants 0572

connection with the subject matter hereof. This AGREEMENT may be amended at any time, but only with the written consent of all parties.

11.4   WAIVER OR BREACH. The waiver of either party of a breach or violation of any provision of this AGREEMENT shall not operate as, or be construed to be, a waiver of any subsequent breach of the same or other provision hereof.

11.5   OTHER CONTRACTS AND THIRD-PARTY BENEFICIARIES. The parties acknowledge that HPL is neither bound by or aware of any other existing contracts to which either the SHERIFF or the COUNTY are a party and which relate to the providing of health care to INMATES/DETAINEES at the Jail. The parties agree that they have not entered into this AGREEMENT for the benefit of any third person or persons, and it is their express intention that this AGREEMENT is for their respective benefits only and not for the benefits of others who might otherwise be deemed to constitute third-party beneficiaries thereof.

11.6   SEVERABILITY. In the event that any one or more provisions of this AGREEMENT shall, for any reason, be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision of this AGREEMENT and this AGREEMENT shall be construed and enforced as if such invalid, illegal or unenforceable provision had never been contained herein.

11.7   FORCE MAJEURE. In case performance of any terms or provisions hereof shall be delayed or prevented because of compliance with any law, decree or order of any governmental agency or authority of local, State or Federal governments or because of riots, war, terrorism, explosions, acts of civil or military authority, acts of public enemy, public disturbances, lack of adequate security escorts, strikes, lockouts, differences with workers, earthquakes, fires, floods, Acts of God or any other reason whatsoever which is not reasonably within the control of the party's whose performance is interfered with and which, by the exercise of reasonable diligence, said party is unable to prevent; the party so suffering may, at its option, suspend, without liability, the performance of its obligations hereunder during the period such cause continues.

11.8   ASSIGNMENT. No party to this AGREEMENT may assign or transfer this AGREEMENT, or any part thereof, without the written consent of the other parties.

11.9   NOTICES. Any notice of termination permitted under this AGREEMENT shall be in writing and shall be deemed delivered when delivered in person or by certified mail, return receipt requested, addressed as follows:

Defendants 0573

If for HPL:  
Health Professionals, LTD.  
General Counsel  
9000 N. Lindbergh, Suite A  
Peoria, Illinois 61615

If for COUNTY:

Sheriff Neil M. Williamson  
#1 Sheriff's Plaza  
Springfield, IL 62701

Such address may be changed from time to time by either party by providing written notice to the other in the manner set forth above.

Any notice of changes mutually agreed upon in the manner of services can be provided via facsimile transmission as follows:

| If for HPL: | If for COUNTY: |
|---|---|
| (309) 272-1643 | (217) 753-6387 |

Such facsimile may be changed from time to time by either party by providing written notice via certified mail as provided above.

11.10 GOVERNING LAW. This AGREEMENT shall be governed by and construed in accordance with the laws of the State of Illinois without regard to the conflicts of laws or rules of any jurisdiction.

11.11 COUNTERPARTS. This AGREEMENT may be executed in several counterparts, each of which shall be considered an original and all of which shall constitute but one and the same instrument.

11.12 TITLES OF PARAGRAPHS. Titles of paragraphs are inserted solely for convenience of reference and shall not be deemed to limit, expand or otherwise affect the provisions to which they relate.

IN WITNESS WHEREOF, the parties have caused this AGREEMENT to be executed in their official acts by their respective representative, each of whom is duly authorized to execute the same.

AGREED TO AND ACCEPTED AS STATED ABOVE:

County of Sangamon, Illinois

By: _____  
Andy Van Meter  
Title: Sangamon County Board, Chairman  
Date: 11/30/07

Health Professionals, LTD.

By: _____  
Theresa S. Falcon-Cullinan, M.D. MBA  
Title: President  
Date: 11/30/07

Defendants 0574