**E-FILED**
Friday, 23 October, 2009  12:22:47 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| JACOB BURRIS, as Special Administrator of the Estate of MAURICE L. BURRIS, deceased, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No.  09-3116 |
| STEPHEN A. CULLINAN, M.D., HEALTH PROFESSIONALS, LTD., LEE ANNE BRAUER, R.N., SANGAMON COUNTY SHERIFF'S DEPARTMENT, NEIL WILLIAMSON, Sheriff of Sangamon County, TERRY DURR, Superintendent of Sangamon County Jail, and SANGAMON COUNTY, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## OPINION

JEANNE E. SCOTT, U.S. District Judge:

This cause is before the Court on Defendants Stephen A. Cullinan, M.D., and Health Professionals, Ltd.'s (collectively HPL Defendants) Motion to Dismiss (d/e 16).  Jacob Burris, as Special Administrator of the Estate of Maurice L. Burris, filed Plaintiff's Response to Motion to Dismiss (d/e 27).

1

Also before the Court is the HPL Defendants' Motion to Dismiss Co-Defendants' Cross-Claim for Contribution (d/e 28). The remaining Defendants (collectively County Defendants) filed the Response of Defendants/Cross-Plaintiffs, Lee Anne Brauer, R.N., Sangamon County Sheriff's Department; Neil Williamson, Individually and in his Official Capacity as Sheriff of Sangamon County; Terry Durr, Individually and in his Official Capacity as Superintendent of the Sangamon County Jail; and Sangamon County to Motion of Defendants/Cross-Defendants, Stephan A. Cullinan, M.D. and Health Professionals, Ltd. to Dismiss Their Cross-Claim for Contribution (d/e 30).

For the following reasons, the HPL Defendants' Motion to Dismiss Plaintiff's Complaint is DENIED, and the HPL Defendants' Motion to Dismiss Co-Defendants' Cross-Claim for Contribution is GRANTED.

## FACTS

The Complaint alleges the following. On December 1, 2007, Sangamon County and Health Professionals, Ltd. (HPL) entered into a contract under which HPL agreed to provide medical services to Sangamon County Jail (Jail) inmates and detainees. Complaint (d/e 1) ¶ 12. HPL agreed to provide the Jail with an on-call physician at all times. Id. ¶ 13.

2

HPL also agreed to make available emergency ambulance services, and to arrange for and cover the cost of hospitalization for an inmate or detainee who, in the opinion of the treating physician or HPL's chief medical director, required such services.  Id. ¶ 13-14.

Dr. Stephen Cullinan is a licensed physician and the chief medical director of HPL.  Id. ¶ 4.  As director, Dr. Cullinan was responsible for developing clinical protocols defining "critical vital signs."  Id., Count I, ¶ 59.  Critical vital signs included a pulse of more than 120 beats per minute, and respiratory rate of more than 25 breaths per minute.  Id.  Under the protocol, a patient whose values fell in the critical range was to be checked every two hours.  Id.  Dr. Cullinan also formulated a policy, that HPL adopted, prohibiting staff from moving an inmate to a hospital under the 911 dispatch system unless there was a "true emergency."  Id. ¶ 65.

Maurice L. Burris was arrested on November 24, 2007, and placed in the Jail.  Id. ¶ 10.  During the night of December 1, 2007, Burris experienced extreme abdominal pain, and vomited blood intermittently until morning.  Id. ¶ 15.  Burris, who had a history of bleeding ulcers, went to see licensed professional nurse Christina Taylor at the Jail on the morning

3

of December 2, 2007.[1]  Id., ¶ 16.  Taylor observed that Burris' face was flushed and grimacing, and that he was doubled over in pain.  Id.  Burris' heart rate was 140 beats per minute, and his respiratory rate was 40 breaths per minute; a normal heart rate is between 60 and 90 beats per minute, and a normal respiratory rate is between 14 and 18 breaths per minute.  Id. ¶¶ 16-17.  A heart rate of more than 120 beats per minute and a respiratory rate of more than 26 breaths per minute are considered "panic values" and exceed the critical vital signs values developed by Dr. Cullinan.  Id. ¶ 21.

Taylor contacted resident nurse Lee Anne Brauer and relayed Burris' symptoms and medical history.  Id. ¶ 19.  Brauer did not come to the Jail to see Burris, but called Dr. Cullinan, who ordered Mylanta, Zantac, and Benadryl for Burris, and transferred him to the medical unit for monitoring.  Id. ¶ 22-23.

That evening, Sgt. Guy E. Bouvet called Brauer and told her that Burris was in a lot of pain, was sweating, and that his stomach was "hard to the touch."  Id. ¶ 24.  Brauer instructed Sgt. Bouvet to have Taylor check on Burris when she arrived for her evening shift.  Id.  Taylor checked Burris

---

[1]It is unclear from the Complaint whether Taylor is an HPL employee, a Jail employee, or otherwise.

out at approximately 4:30 p.m., and found that his heart rate was 142 and respiratory rate was 48.  Id. ¶ 25.  Burris complained of burning in his stomach and when he urinated.  Id.  Taylor found that Burris' abdomen was firm and that he was slumped over and groaning.  Id.  Taylor relayed these findings to Brauer, who instructed Taylor to check in on Burris again in an hour.  Id. ¶ 26.

Taylor returned approximately an hour later to find Burris vomiting. She called Brauer, who in turn called Dr. Cullinan.  Dr. Cullinan advised Brauer that Burris would be "fine."  Id. ¶¶ 27-29.  At 6:30 p.m., Taylor noted that Burris had pain in his left shoulder and numb fingers; his heart rate was down to 115, but his pulse oxygenation level was below normal. Id. ¶ 30.  Surveillance video shows Burris alternating between lying in bed clutching his stomach, and vomiting.  Id. ¶ 31.  Taylor checked on Burris again at 7:30 p.m., and found that he was resting comfortably.  Id. ¶ 32.

On December 3, 2007, Dr. Cullinan examined Burris and noted that he was hunched over and had "possible muscle wall pain with dyspepsia." Id. ¶ 33.  Dr. Cullinan ordered urine ketones and estimated that Burris' pulse was 100, and respiratory rate 16.  Id.  Surveillance video from December 3, 2007, shows Burris vomiting and dry heaving throughout the

day.  Id. ¶ 34.

Early in the morning on December 4, 2007, Burris began to complain to Sgt. Bill Smith about sever abdominal pain, saying that his stomach was burning and was hard to the touch.  Id. ¶¶ 35-36.  Sgt. Smith noticed that Burris' heart rate was back up to 135, and he called Brauer to inform her of Burris' condition.  Id. ¶ 37.  Brauer told Sgt. Smith that she would see Burris in the morning.  Id. ¶ 38.

At 7:00 a.m. on December 4, 2007, Brauer evaluated Burris and found a heart rate of 138, respiratory rate of 44, and a pulse oxygenation rate that was below normal.  Id. ¶ 39.  She contacted Dr. Cullinan to update him on Burris' condition, and he ordered blood work on Burris.  Id. ¶ 41.  However, Brauer was unable to complete the blood work because HPL had not delivered the necessary supplies to the Jail.  Id.  When she told Dr. Cullinan about the lack of supplies, he told her not to worry about it, and that Burris would be fine.  Id. ¶ 42.

Later that morning, Brauer again checked on Burris, and found no change in his condition.  Id. ¶ 43.  At 10:04 a.m., Burris collapsed on the floor of his cell by the toilet.  Id. ¶ 45.  Surveillance video shows that he repeatedly tried to get into bed, but kept falling onto the floor.  Id. ¶ 46.

Nearly 50 minutes later, Burris collapsed again and his arms and legs began to get blotchy. Id. ¶ 48. Jail staff asked Brauer 3 times to call an ambulance before she did so. Id. ¶ 49.

By 11:03 a.m., Burris' pupils were fixed, his skin turned gray, his body went limp, and he went into cardiac arrest. Id. ¶ 50. An ambulance rushed him to St. John's Hospital, where he was diagnosed with septic shock, cardiac arrest, a perforated ulcer, and anoxic brain injury. Id. ¶¶ 51-52. Burris died in the Hospital on December 12, 2007. Id. ¶ 53.

Jacob Burris, Maurice Burris' son, was appointed Special Administrator of the Estate of Maurice L. Burris pursuant to the Illinois Wrongful Death Act. Id., Ex. A. He filed the four-count Complaint in this action on May 13, 2009. Counts I and III are claims brought under 42 U.S.C. § 1983 against Cullinan and HPL, respectively, for violations of Maurice Burris' Fourteenth Amendment rights. Counts II and IV are directed against Cullinan and HPL, respectively, and are brought under the Illinois Wrongful Death Act. Plaintiff brings Counts V and VI under § 1983 against Brauer and the remaining County Defendants, respectively. The County Defendants filed a Cross-Claim (d/e 26), asserting that the HPL Defendants should contribute to any liability the County Defendants may

7

incur under Counts V and VI.

The HPL Defendants filed a Motion to Dismiss the Complaint, arguing that the Plaintiff lacks standing to bring suit against them, and that HPL cannot be held vicariously liable under § 1983 for Cullinan's actions. The HPL Defendants also filed their Motion to Dismiss Co-Defendants' Cross-Claim for Contribution.  They maintain that § 1983 does not recognize a right to contribution.

## ANALYSIS

For purposes of a motion to dismiss, the Court must accept as true all well-pleaded factual allegations in a complaint.  Hager v. City of West Peoria, 84 F.3d 865, 868-69 (7th Cir. 1996); Covington Court, Ltd. v. Village of Oak Brook, 77 F.3d 177, 178 (7th Cir. 1996).  Here, for purposes of ruling on the pending Motions, the Court accepts as true the factual allegations in Plaintiff's Complaint.

I.   MOTION TO DISMISS COMPLAINT

The HPL Defendants urge the Court to dismiss the Complaint for several reasons.  First, they argue that Plaintiff does not have standing to bring this lawsuit as a whole.  Next, they argue that Plaintiff does not have standing to bring a wrongful death claim, or, in the alternative, that Counts

II and IV should be dismissed because they impermissibly commingle separate causes of action under the Illinois Wrongful Death Act and the Illinois Survival Act. Finally, they assert that Count III, brought against HPL, states a vicarious liability claim that is not cognizable under § 1983.

The Court addresses each argument in turn.

A.    <u>Dismissal for Lack of Standing</u>

The HPL Defendants' first argument is that the Court should dismiss the Complaint in its entirety because the Plaintiff does not have standing. They maintain that Plaintiff's appointment as Special Administrator under the Illinois Wrongful Death Act gives Plaintiff standing to sue under the Wrongful Death Act, but not on a survival claim under 42 U.S.C. § 1983. The Court assumes this argument is brought pursuant to Federal Rule of Civil Procedure 12(b)(1), which governs dismissal for lack of subject-matter jurisdiction.

The U.S. Constitution limits federal courts to deciding actual cases and controversies. U.S. CONST. art. III, § 2; <u>Allen v. Wright</u>, 468 U.S. 737, 750 (1984). Inherent in the "case or controversy" requirement is the doctrine of standing, which requires the plaintiff to have "personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to

be redressed by the requested relief." <u>Allen</u>, 468 U.S. at 751; <u>see</u> <u>Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.</u>, 454 U.S. 464, 474-75 (1982). If the plaintiff does not have standing, the federal court may not hear the case, and must dismiss it for lack of subject-matter jurisdiction. <u>Valley Forge</u>, 454 U.S. at 475-76.

The Illinois Wrongful Death Act allows the representative of a person who has died because of the wrongful act or negligence of another to sue on behalf of the decedent's heirs. 740 ILCS 180/2 *et seq.* If the only asset of the decedent's estate is a claim under the Wrongful Death Act, a person entitled to recover under the Act can seek court appointment as the decedent's special administrator to bring the claim. 740 ILCS 180/2.1. Because the Act is in derogation of the common law, it must be strictly construed. <u>Forthenberry v. Franciscan Sisters Health Care Corp.</u>, 509 N.E.2d 166, 167 (Ill.App. 4th Dist. 1987); <u>Matter of Edwards' Estate</u>, 435 N.E.2d 1379, 1382 (Ill.App. 2[d] Dist. 1982).

The Illinois Survival Act, on the other hand, does not create a separate cause of action, but "is merely the conduit through which a cause of action is transferred to the estate representative." <u>Crum v. Health Alliance-Midwest, Inc.</u>, 47 F.Supp.2d 1013, 1016 (C.D. Ill. 1999); <u>see</u> 755 ILCS

5/27-6.  Courts are to construe the Survival Act liberally to help achieve its remedial purpose.  McDaniel v. Bullard, 216 N.E.2d 140, 143 (Ill. 1966). As a matter of federal law, a civil rights claim brought under 42 U.S.C. § 1983 is a claim that survives under the Illinois Survival Act.  Anderson v. Romero, 42 F.3d 1121, 1123 (7th Cir. 1994); Bennett v. Tucker, 827 F.2d 63, 68 (7th Cir. 1987); Beard v. Robinson, 563 F.2d 331, 333 (7th Cir. 1977).  A plaintiff has standing to bring a survival claim when he is appointed as executor or administrator of the decedent's estate under the Illinois Probate Act.  755 ILCS 5/9-4.

The Plaintiff argues that Pantaleo v. Our Lady of Resurrection Medical Center stands for the proposition that an administrator under the Wrongful Death Act also has standing to bring a survival claim.  See Pantaleo v. Our Lady of Resurrection Med. Ctr., 696 N.E.2d 717 (Ill.App. 1st Dist. 1998). This is not accurate.  In Pantaleo, the plaintiff brought survival claims and a wrongful death action as special administrator of his deceased son's estate. Id. at 720.  While the plaintiff's appointment under the Wrongful Death Act occurred before he filed the complaint, his appointment under the Probate Act for standing to bring the survival claims did not occur until after the court entered final judgment on a jury verdict.  Id. at 723.  The

question facing the Illinois Appellate Court was whether the timing of the Probate Act appointment deprived the court of subject-matter jurisdiction over the appeal.  Id.

Citing Illinois' liberal procedural rules governing amendments to pleadings, the court determined that the timing of the appointment should not deprive the plaintiff of a decision on the merits.  Id.  The court also noted that it had been clear since the beginning of the case that the plaintiff intended to bring the survival claims as administrator of his son's estate.  Id. The Pantaleo plaintiff had standing to bring survival claims because he was eventually appointed under the Probate Act, not because the court determined that he had standing pursuant to his appointment under the Wrongful Death Act.  See id.

Here, the Circuit Court of Sangamon County appointed Plaintiff to be Special Administrator of the Estate of Maurice L. Burris pursuant to the Illinois Wrongful Death Act.  This appointment is effective only for wrongful death actions, and does not confer upon the Plaintiff standing to bring claims under the Survival Act.  In order for the Plaintiff to have standing to bring the survival claims, he must seek appointment as executor or administrator of Maurice L. Burris' estate under the Probate Act.  While

this may be, as Plaintiff characterizes it, a "distinction without a difference," the Court is required to follow the Wrongful Death Act's plain language that the appointment is effective for purposes of bringing "the claim;" "the claim" unequivocally refers to one for wrongful death brought pursuant to the Act.  740 ILCS 180/2.1.

However, rather than dismissing Counts I and III, the Court grants Plaintiff leave first to seek appointment under the Illinois Probate Act, and then to file an amended complaint in this Court.  See Wakulich v. Mraz, 785 N.E.2d 843 (Ill. 2003) (allowing plaintiff to seek appointment to bring survival claims and to amend complaint accordingly); Abiola v. Abubakar, 2003 WL 22012220, at *3 (N.D. Ill. Aug. 25, 2003) (allowing plaintiff reasonable time to demonstrate that she was the real party in interest rather than immediately dismissing complaint).

Therefore, the Plaintiff is given leave to seek appointment under the Illinois Probate Act for purposes of bringing the survival claims contained in Counts I and III, and may amend the Complaint in this case on or before December 15, 2009, to reflect such appointment.  The HPL Defendants'

request to dismiss Counts I and III is denied at this time.[2]

B.    Wrongful Death Act and Survival Act Claims

The HPL Defendants next argue that the Court should dismiss the Plaintiff's claims under the Wrongful Death Act because, by virtue of raising survival claims, the Plaintiff has demonstrated that a wrongful death claim is not the estate's "only asset" as required under the Act.  Therefore, the argument goes, the Plaintiff does not have standing to sue under the Wrongful Death Act.

This argument ignores the fact that the Sangamon County Circuit Court has already appointed Plaintiff Special Administrator of the Estate of Maurice L. Burris.  See Complaint, Ex. A.  The Illinois Wrongful Death Act gives the Illinois state courts the power to appoint special administrators if certain requirements are met.  745 ILCS 180/2.1.  Here, the Sangamon County Circuit Court found the statutory criteria satisfied and issued the appointment.   This Court must give the order effect.   If the HPL Defendants wish to challenge the Plaintiff's appointment, they must take

_____

[2]The Court treats the HPL Defendants' request for "dismissal of Counts II and IV" on standing grounds as a typographical error, as those Counts are brought under the Wrongful Death Act, and Counts I and III of the Complaint contain the survival claims. See Memorandum of Law in Support of Motion to Dismiss (d/e 17), p. 4.

up the issue with the Sangamon County Circuit Court, not this Court.

Therefore, the Plaintiff, as duly appointed Special Administrator of the Estate of Maurice L. Burris, has standing to bring the claims for wrongful death alleged in the Complaint, and the request to dismiss Counts II and IV is denied.

The HPL Defendants alternatively assert that if the Plaintiff does have standing to bring a wrongful death claim, the Court should still dismiss Counts II and IV because they attempt to state claims for relief under both the Wrongful Death Act and the Survival Act. The HPL Defendants claim that the Complaint "makes reference to various prayers for relief which are not appropriate for one claim, but may be appropriate for another or neither claim." Memorandum of Law in Support of Motion to Dismiss, p. 6.

The HPL Defendants offer no support for this argument. They do not even direct the Court to the provisions of the Complaint that are allegedly deficient or inappropriate. The Court will not make guesswork of what specifically the HPL Defendants find objectionable. Therefore, the motion to dismiss Counts II and IV is denied.

C.    Section 1983 Claim Against HPL

The HPL Defendants argue that Count III should be dismissed

because claims brought under a *respondeat superior* theory of liability are not recognized under § 1983.  Plaintiff counters that he is not asserting that HPL is vicariously liable for Dr. Cullinan's actions, but rather that HPL is directly liable.  The Court assumes that this Motion is brought pursuant to Federal Rule of Civil Procedure 12(b)(6).

Rule 12(b)(6) provides that dismissal is proper where a complaint fails to state a claim on which relief can be granted.  FED. R. CIV. P. 12(b)(6). While a complaint need not contain detailed, specific factual allegations, it must contain sufficient facts to "state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A claim is plausible if the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. 1937, 1949 (2009).  The Seventh Circuit has held that a claim is plausible on its face if it provides the defendant fair notice of what the claim is and the grounds upon which it rests.  George v. Smith, 507 F.3d 605, 608 (7th Cir. 2007).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that he was deprived of a federal constitutional right by an individual or individuals acting under color of state law.  Jones v. Wilhelm, 425 F.3d

455, 465 (7th Cir. 2005).  Although a plaintiff may establish direct municipal liability under limited circumstances, it is well settled that "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory."  Monell v. Dept. of Social Services of City of New York, 436 U.S. 658, 691 (1978).  This is also the case if the defendant-employer in a § 1983 action is a private individual or private corporation.  Rodriguez v. Plymouth Ambulance Serv., 577 F.3d 816 (7th Cir. 2009); see Iskander v. Vill. of Forest Park, 690 F.2d 126, 128 (7th Cir. 1982) ("[A] private corporation is not vicariously liable under § 1983 for its employees' deprivations of others' civil rights.").

A plaintiff may establish direct municipal or corporate liability under § 1983 if:

> [T]he injury alleged is the result of a policy or practice, or liability can be "demonstrated indirectly 'by showing a series of bad acts and inviting the court to infer from them that the policy-making level of government was bound to have noticed what was going on and by failing to do anything must have encouraged or at least condoned . . . the misconduct of subordinate officers.'"

Johnson v. Dossey, 515 F.3d 778, 782 (7th Cir. 2008) (quoting Woodward v. Corr. Med. Servs. of Ill., Inc., 368 F.3d 917, 927 (7th Cir. 2004)) (internal citation omitted).  A corporate "policy" can be found to exist when an

individual with final policymaking authority causes the plaintiff's injury. <u>Id.</u> (quoting <u>Estate of Sims ex rel. Sims v. County of Bureau</u>, 506 F.3d 509, 515 (7th Cir. 2007)). The policy must be the "moving force" behind the constitutional violation. <u>Woodward</u>, 368 F.3d at 927.

The HPL Defendants argue that Count III attempts to state a claim against HPL based on vicarious liability for Dr. Cullinan's actions. Plaintiff counters that the claim is brought against HPL for a policy or practice that led to the deprivation of Maurice Burris' constitutional rights, and that Dr. Cullinan had authority to set policy for HPL.

The Court must credit as true the allegations in the Complaint. The Plaintiff alleges that Dr. Cullinan was "a person with final decision making authority for HPL in that he was the medical director of HPL and the person who approved of all of HPL's policies and procedures regarding transfer of an inmate or a detainee for medical care." <u>Complaint</u>, Count III, ¶ 58. The Plaintiff further alleges that the policies Dr. Cullinan designed and that HPL adopted and implemented were ones that injured Maurice Burris. <u>Id.</u>, ¶ 68(g). The Plaintiff states that Dr. Cullinan acted as HPL's agent when he created the policies at issue in this case. <u>Id.</u> These are allegations of direct, not vicarious, liability. <u>See</u> <u>Dossey</u>, 515 F.3d at 783

(actions of corporate defendant's agent treated as corporation's actions in § 1983 case, precluding dismissal).

The Plaintiff's allegations at this stage are sufficient to state a claim for HPL's direct liability under § 1983.   Therefore, the Court declines to dismiss Count III.

II.   <u>MOTION TO DISMISS CROSS-CLAIM</u>

The HPL Defendants have also brought a Motion to Dismiss Co-Defendants' Cross-Claim for Contribution, arguing that § 1983 does not authorize a right to contribution among joint tortfeasors.

The HPL Defendants are correct.  This Court has held that § 1983 does not authorize a right to contribution.   <u>Estate of Carlock ex re. Andreatta-Carlock v. Williamson</u>, 2009 WL 1708088 at * 4 (C.D. Ill. June 12, 2009).  The Court adopted the reasoning of the District Court for the Eastern District of New York in   <u>Mathis v. United Homes, LLC</u>, 607 F.Supp.2d 411 (E.D.N.Y. 2009).  As the <u>Mathis</u> Court pointed out, when a statute is silent as to contribution, the relevant inquiries are whether Congress intended to create such a remedy, and whether there is a federal common law right to contribution.  <u>Id.</u> at 420; <u>see</u> <u>Northwest Airlines, Inc. v. Transp. Workers Union of America, AFL-CIO</u>, 451 U.S. 77, 91 (1981)

("The ultimate question . . . is whether Congress intended to create the private remedy . . . ."); <u>Texas Indus., Inc. v. Radcliff Materials, Inc.</u>, 451 U.S. 630, 640 (1981)(noting that "federal common law" exists only in very limited areas of law).

The court went on to find that there was no federal common law right to contribution under § 1981, § 1982, or § 1985, and that Congress had not intended such a right.  <u>Mathis</u>, 607 F.Supp.2d at 423-29.  This Court held that the <u>Mathis</u> Court's reasoning is likewise applicable to a § 1983 action. <u>Estate of Carlock</u>, 2009 WL 1708088 at * 4.  Likewise, a majority of district courts addressing this issue has held that there is no right to contribution under § 1983.  <u>Mathis</u>, 607 F.Supp.2d at 427 n.17.

The County Defendants first argue that the Court should rely on the Third Circuit Court of Appeals's opinion in <u>Miller v. Apartments and Homes of New Jersey</u>, rather than on <u>Mathis</u>.  In <u>Miller</u>, the Third Circuit held that there is a right to contribution in civil rights cases.  <u>Miller v. Apts. and Homes of N.J., Inc.</u>, 646 F.2d 101 (3$^d$ Cir. 1981).  <u>Miller</u> was decided before and without reference to <u>Northwest Airlines</u> and <u>Texas Industries</u>, and courts that have addressed <u>Miller</u> since then have held that its reasoning is inconsistent with <u>Northwest Airlines</u> and <u>Texas Industries</u>.  <u>Mathis</u>, 607

F.Supp.2d at 427 n.17.  The Court accordingly declines to adopt <u>Miller</u>'s position.

The County Defendants next urge the Court to adopt Illinois' contribution rules because, even if federal law does not afford a right to contribution, under 42 U.S.C. § 1988, the Court should apply state-law remedies when they are consistent with the policies underlying § 1983. They argue that because allowing contribution in this case would not interfere with the Plaintiff receiving compensation, and because the HPL Defendants are already parties to the suit, a right to contribution is consistent with federal law.

Pursuant to 42 U.S.C. § 1988, the courts must go through a three-step process to select the appropriate substantive law in a civil rights action.[3] <u>Bass by Lewis v. Wallenstein</u>, 769 F.2d 1173, 1188 (7th Cir. 1985).  First, the court looks to whether federal law fails to provide a particular rule or remedy.  <u>Id.</u>  Next, if there is no federal remedy, the court compares the state law to the relevant federal provision to determine whether the two are

---

[3]It is questionable whether "'the availability of contribution even merits application of the Section 1988 test . . . .'"  <u>Crews v. County of Nassau</u>, 612 F.Supp.2d 199, 209 (E.D.N.Y. 2009) (quoting <u>Mason v. City of N.Y.</u>, 949 F.Supp. 1068, 1079 (S.D.N.Y. 1996)).  For purposes of addressing the County Defendants' arguments, the Court assumes *arguendo* that § 1988 applies.

consistent.  Id.  Finally, if they are consistent, the court applies the state-law provision; if the provisions are inconsistent, the court must reject the state law provision.  Id.; see Robertson v. Wegmann, 436 U.S. 584, 588-89 (1978).

In this case, the Court has already determined that Congress did not intend a right to contribution under § 1983, and that there is no federal common law right to contribution in this case.  Therefore, the relevant inquiry for § 1988 purposes is whether Illinois' contribution law is consistent with § 1983.

To determine whether a state law is inconsistent with a federal law, a court must look not only to the particular statutory provisions, but to the policies supporting those provisions.  Robertson, 436 U.S. at 590.  "The policies underlying § 1983 include compensation of persons injured by deprivation of federal rights and prevention of abuses of power by those acting under color of state law."  Id. at 590-91; see Wyatt v. Cole, 504 U.S. 158, 161 (1992) (stating that § 1983's purpose is "to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights . . . ."); Payne for Hicks v. Churchich, 161 F.3d 1030, 1039 (7th Cir. 1998) (quoting Wyatt).

The fundamental purpose behind the Illinois Joint Tortfeasor Contribution Act (Illinois Act) is that a plaintiff is entitled to only one satisfaction for his injuries.  Sompo Japan Ins., Inc. v. Nippon Cargo Airlines Co., Ltd., 522 F.3d 776, 788 (7th Cir. 2008); see 740 ILCS 100/2; Pasquale v. Speed Prods. Engineering, 654 N.E.2d 1365, 1381 (Ill. 1995).  The Illinois Act is also designed to encourage settlement, and to fairly apportion liability among jointly culpable tortfeasors.  Virginia Sur. Co., Inc. v. Northern Ins. Co. of N.Y., 866 N.E.2d 149, 154 (Ill. 2007); Pecoraro v. Balkonis, 891 N.E.2d 484, 495 (Ill.App. 1st Dist. 2008).  There is no indication that the Illinois Act serves a deterrent function.

Although the County Defendants point out that § 1983 and the Illinois Act are consistent in terms of compensating the Plaintiff, they wholly ignore § 1983's other primary function as a deterrent, and the Illinois Act's inconsistency with that function.  Indeed, the deterrent effects of § 1983 would be reduced by allowing state actors to seek contribution, and would thus frustrate one of the purposes behind the provision.  See Dobson v. Camden, 705 F.2d 759, 764-65 (5th Cir. 1983); Crews, 612 F.Supp.2d at 212; Mason, 949 F.Supp. at 1079.  The Illinois Act is therefore inconsistent with the federal policy underlying § 1983, and fails to meet the § 1988 test.

In sum, the County Defendants' arguments are neither compelling nor persuasive. The Court therefore declines their invitation to reverse its holding that there is no right to contribution under § 1983. Accordingly, the Court dismisses the County Defendants' Cross-Claim.

CONCLUSION

THEREFORE, Defendants Stephen A. Cullinan, M.D., and Health Professionals, Ltd.'s Motion to Dismiss (d/e 16) is DENIED. The Plaintiff is granted leave to seek appointment as representative of Maurice L. Burris' estate in state court pursuant to the Illinois Probate Act. The Plaintiff is further granted leave to amend the Complaint in this action once he has secured the appointment. Plaintiff is to file an amended complaint with the Court on or before December 15, 2009. All Defendants are ordered to file answers to the amended complaint on or before January 15, 2010.

The HPL Defendants' Motion to Dismiss Co-Defendants' Cross-Claim for Contribution (d/e 28) is GRANTED. The Cross-Claim by Defendants/Cross-Plaintiffs, Lee Anne Brauer, R.N., Sangamon County Sheriff's Department, Neil Williamson, Individually and in his Official Capacity as Sheriff of Sangamon County, Terry Durr, Individually and in his Official Capacity as Superintendent of the Sangamon County Jail and

Sangamon County Against Defendants/Cross-Defendants, Stephan A. Cullinan, M.D. and Health Professionals, Ltd. (d/e 26) is DISMISSED.

IT IS THEREFORE SO ORDERED.

ENTER:   October 23, 2009

   FOR THE COURT:

       _____s/  Jeanne E. Scott_____
         JEANNE E. SCOTT
       UNITED STATES DISTRICT JUDGE