## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| JACOB BURRIS, as Administrator of the Estate of MAURICE L. BURRIS, Deceased, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 09-3116 |
| STEPHEN A. CULLINAN, MD; HEALTH PROFESSIONALS, LTD.; LEE ANNE BRAUER, R.N.; SANGAMON COUNTY SHERIFF'S DEPARTMENT; NEIL WILLIAMSON, individually and in his official capacity as Sheriff of Sangamon County; TERRY DURR, individually and in his official capacity as Superintendent of Sangamon County Jail; and SANGAMON COUNTY, | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## OPINION

SUE E. MYERSCOUGH, United States District Judge.

This cause is before the Court on the Motion to Dismiss Count VI

of the Second Amended Complaint (d/e 135) (Motion to Dismiss) filed

by Defendants Neil Williamson, Terry Durr, the Sangamon County

Sheriff's Department, and Sangamon County.  For the reasons stated below, Defendants' Motion to Dismiss is GRANTED IN PART AND DENIED IN PART.

## I. BACKGROUND

In May 2011, Plaintiff Jacob Burris, Administrator of the estate of decedent Maurice Burris (Decedent), filed a Second Amended Complaint.   Count VI of the Second Amended Complaint is brought against Defendants Williamson (the Sangamon County Sheriff) and Durr (the Superintendent of the Sangamon County Jail) in both their individual and official capacities, as well as the Sangamon County Sheriff's Department and Sangamon County.  Count VI is brought pursuant to 42 U.S.C. § 1983 and alleges deprivation of Decedent's Fourteenth Amendment right to basic health services.

Specifically, Count VI of the Second Amended Complaint alleges the following.  On November 24, 2007, Decedent was arrested and placed in the Sangamon County Jail in Springfield, Illinois.  On the night of December 1, 2007, Decedent began having severe stomach pain.  He

vomited blood throughout that night. On December 2, 3, and 4, the Medical Director at the jail, Lee Anne Brauer (a Registered Nurse (RN) and Sangamon County employee), was on call to address any medical problems that would arise at the jail. Brauer was informed of Decedent's symptoms and knew his heart rate and pulse were dangerously high. Despite this knowledge, Brauer did not go to the jail and examine Decedent on December 2. Brauer called Dr. Stephen Cullinan and provided him with Decedent's symptoms and medical history. Dr. Cullinan advised Brauer that Decedent would be "fine."

On December 2, 2007, Decedent was observed in extreme pain. His skin was described as "clammy to touch and sweating" and his stomach was "hard to the touch." At 4:30 p.m. that day, Christina Taylor, a Licenced Practical Nurse (LPN), observed that Decedent had a heart rate of 142 and respiratory rate of 48 breaths per minute.[1] At 5:08 p.m., Taylor found Decedent vomiting and informed Brauer. Brauer

---

[1] The Second Amended Complaint alleges that recognized medical treatises define heart rates greater than 120 and respiratory rates greater than 26 breaths per minute as "panic values."

again refused to come in.  At 5:15 p.m., Brauer called Dr. Cullinan and informed him of these observations and received no new orders.  Dr. Cullinan again advised Brauer that Decedent would be "fine."

At 6:30 p.m., Taylor noted that Decedent was complaining of "shocking pain in the left shoulder, with numb fingers" and that heart rate was 115 and his pulse oxygenation level was below normal. Surveillance video shows Decedent in bed at 7:30 p.m. apparently vomiting and alternately clutching his abdomen or his hands clasped together over his head.  However, at 7:30 p.m., Taylor noted that Decedent was "resting quietly" with no signs or symptoms of distress.

At 7:00 a.m. on December 3, 2007, Dr. Cullinan examined Decedent.  Dr. Cullinan assessed Decedent as "walking, stooped forward" having tender rectus muscle and "possible muscle wall pain with dyspepsia" and ordered urine ketones to be obtained.  Decedent had a pulse of 100 and respiratory rate of 16.  Surveillance video shows Decedent did not eat all day, made repeated trips to the sink where he either vomited or had "dry heaves," walked stooped over, clutched his

abdomen while in bed, and was exceedingly restless.

On December 4, 2007, at 1:00 a.m., Decedent advised Sergeant Bill Smith he was having a bleeding ulcer and complained of severe pain. Decedent also complained that his stomach was burning and very hard to the touch. His heart rate was 135. Smith advised Brauer of this. Brauer told Smith that Decedent was "fine" and that she would see him in the morning.

At 7:00 a.m., Brauer obtained Decedent's vital signs. His heart rate was 138, his respiratory rate was 44, his temperature was 95, and he had a pulse oxygenation level of 94 percent. According to the Second Amended Complaint, "[t]he heart rate and respiratory rates listed above were again 'critical values' and the temperature and pulse ox rates were below normal." Brauer obtained orders from Dr. Cullinan to get a "CBC" and a "chem 20" (basic blood work) done. However, Brauer failed to draw Decedent's blood for the lab test because Health Professionals, Ltd. (HPL) had not yet delivered the supplies to the jail that were needed to carry out the order. Brauer informed Dr. Cullinan that she could not

perform the orders because the supplies were unavailable.  Dr. Cullinan

informed Brauer that Decedent would be fine and not to worry about it.

Surveillance videos showed that Decedent collapsed on the floor at

10:04 a.m. but nobody noticed.  Decedent repeatedly fell onto his bed

for the next 45 minutes.  Decedent collapsed again at 10:56 a.m.  Shortly

after 11: 00 a.m., and after the conditions noted above were observed,

Brauer "had to be asked by jail staff three times before she would call for

an ambulance."  At 11:22 a.m., Decedent was taken to St. Johns Hospital

and diagnosed with an "acute abdomen," septic shock, and cardiac arrest.

He also had a perforated ulcer and unrecoverable anoxic brain injury.

Decedent died at St. Johns Hospital on December 12, 2007, from

an anoxic brain injury resulting from lack of oxygen during and after his

cardiac arrest at the jail.  The Complaint alleges that, if Decedent had

been timely transferred to the hospital on December 4, 2007, he could

have received a CT scan to diagnose and treat his ulcer to prevent his

death.

Count VI of the Second Amended Complaint alleges that Sheriff

Williamson and Superintendent Durr adopted policies requiring that adequate medical care be made available for the inmates and detainees on a 24-hour basis. If an inmate's health care needs could not be provided on site at the jail, Brauer was to transfer the inmate to a local hospital emergency room by an ambulance. Sangamon County had entered into a contract with HPL for the provision of health care services to the inmates and detainees. Williamson and Durr adopted an unwritten policy that no inmate patient left the hospital without the consent of an HPL physician. Williamson and Durr were advised that it was HPL's policy that no one could be transferred unless it was a "'true emergency' with life, limb[,] or eyesight in jeopardy requiring immediate dispatch to the hospital under the 911 emergency dispatch system." Plaintiff alleges that as a result of the adopted policies, Brauer was under the misapprehension that she had no authority to call an ambulance and, therefore, did not call for an ambulance until it was too late.

Plaintiff alleges that Williamson and Durr knew that under the policy, inmates and detainees with urgent medical needs that could not

be provided at the jail would not have those needs met until it was too late to provide adequate and effective care. Plaintiff also alleges that Williamson, Durr, the Sheriff's Department, and Sangamon County were deliberately indifferent to securing the rights to basic medical care for any inmate with an acute illness because: (1) they failed to provide proper instructions to Brauer to inform her that she had the authority to transfer a detainee to the hospital without a doctor's consent where the detainee had urgent need for hospitalization; (2) adopted a policy delegating to HPL the sole permission to transfer a detainee regardless of the circumstances of the detainee's need for medical care even though Defendants knew it was HPL's policy only to transfer inmates whose life or limb was in immediate jeopardy; and (3) entered into a contract with HPL granting HPL perverse financial incentives which penalized HPL for engaging medically appropriate transfers and at the same time failing to require that HPL transfer detainees to the hospital who had urgent medical needs which could not be met at the Sangamon County Jail. As a result, Brauer was under the misapprehension she did not have the

authority to transfer Decedent to a local hospital before 11:00 a.m. on December 4, 2007. Moreover, as result of the policies, Brauer did not call for an ambulance until Decedent was on the cusp of cardiac arrest and beyond the point of receiving any effective medical treatment. Decedent's perforated ulcer went undiagnosed and untreated, resulting in massive peritonitis, cardiac arrest, and death.

Defendants now move to dismiss Count VI of the Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), asserting the Complaint fails to state a claim upon which relief can be granted. Plaintiff has filed a response.

## II. JURISDICTION AND VENUE

Because Plaintiff brought a civil rights action pursuant to § 1983, this Court has jurisdiction over those claims pursuant to 28 U.S.C. § 1331. See 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States"). Venue is proper because the violation of the decedent's civil rights took place at the Sangamon County Jail in

Springfield, Illinois.  <u>See</u> 28 U.S.C. 1391(b) (a civil action where

jurisdiction is not founded solely on diversity of citizenship may be

brought in a judicial district where a substantial part of the events or

omissions giving rise to the claim occurred).

## III. ANALYSIS

### A. Standard of Review

Under Federal Rule of Civil Procedure 12(b)(6), a motion to

dismiss is proper where a complaint fails "to state a claim upon which

relief can be granted."  Fed.R.Civ.P. 12(b)(6).  For purposes of the

motion, a court must accept as true all well-pleaded allegations contained

in the complaint and draw all inferences in the light most favorable to the

non-moving party.  <u>Estate of Davis v. Wells Fargo Bank</u>, 633 F.3d 529,

533 (7th Cir. 2011).  To survive a motion to dismiss under 12(b)(6), the

complaint must "plausibly suggest that the plaintiff has a right to relief,

and allegations raise the possibility of a right to relief above a 'speculative

level." <u>EEOC v. Concentra Health Svs., Inc.</u>, 496 F.3d 773, 777 (7th Cir.

2007) (citing <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).

A complaint does not fail if it is vague or lacking in detail as long as it provides the minimum facts necessary to put the defendant on notice of the claim. Higgs v. Carver, 286 F.3d 437, 439 (7th Cir. 2002).

## B. Defendants' Motion to Dismiss

Defendants seek to dismiss Count VI of the Second Amended Complaint on a number of grounds: Defendants assert: (1) the official capacity claims against Williamson and Durr are redundant with the claim against the Sheriff's Department; (2) to the extent Williamson and Durr are sued in their individual capacities for the adoption of an unconstitutional policy, they bear no personal liability because only municipalities have liability under Monell v. Department of Social Services of the City of New York, 436 U.S. 658 (1978), and Williamson and Durr have no personal involvement in the alleged constitutional deprivations to otherwise hold them liable; (3) Sangamon County is a separate legal entity from the Sheriff's Department and has no liability under § 1983 for the alleged unconstitutional policies of the Sheriff's

Department[2]; and (4) the Sheriff's Department, Sangamon County, and Williamson and Durr–in their official capacities–are immune from punitive damages.

The Court notes that Defendants have neither offered argument why the claims against the Sheriff's Department should be dismissed, nor offered argument why the official capacity claims against Williamson and Durr fail to state a claim.[3]

1. **Official-Capacity Claims Against Williamson and Durr are Redundant of the Claims Against the Sangamon County Sheriff's Department**

Defendants argue that because the Sheriff's Department is a named party, the official capacity claims against Williamson and Durr are redundant and should be dismissed. "A suit against a governmental officer in his official capacity is really a suit against the entity of which

---

[2] Defendants also state that Sangamon County has been joined as a Defendant in the lawsuit and has been sued as a tortfeasor and not as an indispensable party under Carver v. Sheriff of Lasalle County, 324 F.3d 947, 948-49 (7th Cir. 2003), for purposes of paying a judgment.

[3] Defendants have alleged the official capacity claims against Williamson and Durr should be dismissed because those claims are redundant to the claims against the Sheriff's Department.

the officer is an agent." <u>Franklin v. Zaruba</u>, 150 F.3d 682, 684 n.2 (7th Cir. 1998). "Thus, in any claim in which the Sangamon County Sheriff's Department also is named as a defendant, claims against the other Defendants in their official capacities are redundant and should be dismissed." <u>Smith v. Sangamon County Sheriff's Department</u>, No. 07-3150, 2008 WL 2477683, at *2 (C.D. Ill. 2008). Accordingly, Plaintiff's claims against Defendants Williamson and Durr in their official capacities are the same as, and redundant of, his claims against the Sangamon County Sheriff's Department. Therefore, this Court will dismiss the official capacity claims against Williamson and Durr in Count VI of the Second Amended Complaint.

## 2. <u>Individual Capacity Claims Against Williamson and Durr Survive</u>

Count VI of the Second Amended Complaint alleges § 1983 individual capacity claims against Williamson and Durr, while Count VI requests judgment against Defendants Williamson and Durr in their "personal and official capacity." As stated, the Court will dismiss the official capacity claims against Williamson and Durr in Count VI as

redundant of the claims against the Sangamon County Sheriff's Department.  Therefore, only the individual capacity claims against Williamson and Durr remain to be addressed.

Under § 1983, there is a significant distinction between a suit brought against an officer in his individual capacity and one brought against an officer in his official capacity.  Hill v. Shelander, 924 F.2d 1370, 1372 (7th Cir. 1991).  A lawsuit against an individual in his official capacity "generally represent[s] only another way of pleading an action against an entity of which the officer is an agent."  Kentucky v. Graham, 473 U.S. 159, 165 (1985).  "An official-capacity suit is not a suit against the official as an individual; the real party in interest is the entity. Therefore, a plaintiff looking to recover on a damages judgment in an official-capacity suit can look only to the entity itself, not to the official." Wilson v. Civil Town of Clayton, Ind., 839 F. 2d 375, 382 (7th Cir. 1988).  On the other hand, individual capacity claims "seek to impose individual liability upon a government officer for actions taken under color of state law."  Hafer v. Melo, 502 U.S. 21, 25 (1991) (citations

omitted).

The Supreme Court has held that a § 1983 claim imposes liability on a government that, "under color of some official policy, 'causes' an employee to violate another's constitutional rights." Monell, 436 U.S. at 692. However, a Plaintiff may also bring an action under § 1983 against an official in his individual capacity if there is a personal involvement in the deprivation of the constitutional right. Gossmeyer v. McDonald, 128 F.3d 481, 495 (7th Cir. 1997).

To establish an individual-capacity claim against a supervisory official, the official must have caused or participated in the alleged violation. Wolf-Lillie v. Sonquist, 699 F.2d 864, 869 (7th Cir. 1983) (stating the supervisory official must be directly responsible for the injuries resulting from the improper action). Although direct participation in the deprivation is not required (Rascon v. Hardiman, 803 F.2d 269, 274 (7th Cir. 1986)), an individual may be liable if he is personally involved in the alleged constitutional deprivation (Wolf-Lillie, 699 F.2d at 869. Officials such as Williamson and Durr are considered

to be personally involved if: (a) he participates directly in the constitutional deprivation; (b) he acts or fails to act with reckless disregard of the plaintiff's constitutional rights; or (c) the conduct that deprived the plaintiff of his constitutional rights occurred at his direction or with his knowledge and consent. Lile v. Tippecanoe County Jail, 844 F.Supp. 1301, 1308 (N.D. Ind. 1992). The official must know about, facilitate, approve, condone, or deliberately turn a blind eye to the unconstitutional conduct. Gentry v. Duckworth, 65 F.3d 555, 561 (7th Cir. 1995). In other words, the official must act "knowingly or with deliberate, reckless indifference." Stone-el v. Sheahan, 914 F.Supp. 202, 204 (N.D. Ill. 1995) (citing Jones v. City of Chicago, 856 F.2d 985, 992-93 (7th Cir. 1988)).

The Seventh Circuit has stated that "if the supervisor personally devised a deliberately indifferent policy that caused a constitutional injury, then individual liability might flow from that act." Armstrong v. Squadrito, 152 F.3d 564, 581 (7th Cir. 1998). In this case, Plaintiff has alleged that Williamson and Durr adopted the allegedly unconstitutional

policy at issue and that Williamson and Durr were "deliberately indifferent to securing the rights to basic medical care for an inmate with an acute illness including Maurice Burris."  Read in the light most favorable to Plaintiff, Count VI of the Second Amended Complaint alleges that Wiliamson and Durr adopted a deliberately indifferent policy that caused a constitutional injury.  See Aleman v. Dart, No. 09-cv-6049, 2010 WL 4876720, at *6 (N.D. Ill. 2010).  Therefore, the Defendants, Williamson and Durr, are not entitled to have the individual capacity claims dismissed.

### 3.  Claim Against Sangamon County

Defendants claim Count VI of the Second Amended Complaint fails to state a claim against Sangamon County because it is predicated upon the actions of the Sheriff's Department.  According to Defendants, Sangamon County is a separate legal entity and, therefore, bears no substantive liability.  Defendants maintain that in any future iteration of a claim against Sangamon County, Plaintiff should be allowed to name Sangamon County only as a necessary party pursuant to Carver v. Sheriff

of LaSalle County, 324 F.3d 947, 948 (2003) (stating that, in Illinois, a county is "a necessary party in any suit seeking damages from an independently elected county officer (sheriff, assessor, clerk of court, and so on) in an official capacity").  Plaintiff agrees there is no need to assert a claim against Sangamon County substantively but states that under Carver, Sangamon County is an indispensable party due to the fact that there are valid claims asserted against the Sheriff's Department as well as the official capacity claims against Williamson and Durr.  Plaintiff requests leave to designate Sangamon County as a Carver defendant as Defendants suggest.

Sangamon County cannot be held directly liable based on the official liability of the Sheriff.  Thompson v. Duke, 882 F.2d 1180, 1187 (7th Cir. 1989).  However, "an official capacity claim against the Sheriff is essentially a claim against the governmental entity that he represents," which in this case is the Sangamon County Sheriff's Office.  Wells v. Bureau County, 723 F.Supp.2d 1061, 1081 (C.D. Ill. 2010).  While, plaintiff concedes he cannot maintain a § 1983 action against Sangamon

County for practice, policies, or actions which are unrelated to that entity[4] (see Thompson, 882 F.2d at 1187), Sangamon County is, nevertheless, a necessary party in any suit seeking damages against the Sheriff's Department and Williamson and Durr in their official capacities. Wells, 723 F.Supp.2d at 1081 (citing Carver, 324 F.3d at 948). Therefore, to the extent Count VI of the Second Amended Complaint asserts any substantive liability against Sangamon County, that claim is dismissed. However, pursuant to Carver, the Court will grant Plaintiff's request for leave to designate Sangamon County as a named defendant solely because Sangamon County will be responsible to pay any judgment entered against the Sheriff's Department.

## 4. Punitive Damages

Defendants also argue that the Sheriff's Department, Sangamon County, and Williamson and Durr-in their official capacities-are immune from any claim for punitive damages. In City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981), the Supreme Court held a

_____

[4] Plaintiff does not allege that Sangamon County itself instituted the policy at issue, but rather he alleges Williamson and Durr alone devised the policy at issue.

municipality is immune from punitive damages under § 1983.

Moreover, as previously stated, "an official capacity suit is tantamount to a claim against the government entity itself." Guzman v. Sheahan, 495 F.3d 852, 859 (7th Cir. 2007). Therefore, the requests for punitive damages against the Sheriff's Department, Sangamon County, and Williamson and Durr-in their official capacity-will be stricken.

However, "[p]unitive damages may be recovered in an individual capacity suit." See Hill v. Shelander, 924 F.2d at1373. Because Plaintiff has stated individual capacity claims against Williamson and Durr, Defendants' Motion to Dismiss the claim for punitive damages against Williamson and Durr in their individual capacities will be denied.

## IV. CONCLUSION

THEREFORE, Defendants' Motion to Dismiss Count VI of the Second Amended Complaint (d/e 135) is GRANTED IN PART AND DENIED IN PART. The (1) official-capacity claims against Williamson and Durr and (2) any claim of substantive liability against Sangamon County are DISMISSED. Moreover, Plaintiff's request for punitive

damages against the Sangamon County Sheriff's Department, Sangamon County, and Williamson and Durr in their official capacities is STRICKEN. The individual-capacity claims against Williamson and Durr and the claims against the Sangamon County Sheriff's Department survive. Further, Sangamon County remains in this case solely as a named Defendant because it is an indispensable party pursuant to Carver, 324 F.3d at 948, since Sangamon County would be responsible to pay any judgment entered against the Sangamon County Sheriff's Department. This case is REFERRED back to Judge Cudmore for further pre-trial proceedings.

IT IS SO ORDERED.

ENTERED: July26, 2011.

FOR THE COURT:

_____s/ Sue E. Myerscough_____
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE