E-FILED
Friday, 26 August, 2011 11:51:04 AM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| JACOB BURRIS, as Special Administrator of the Estate of MAURICE L. BURRIS, deceased,<br><br>    Plaintiff,<br><br>v.<br><br>STEPHEN A. CULLINAN, M.D.; HEALTH PROFESSIONALS, LTD; LEE ANNE BRAUER, R.N.; SANGAMON COUNTY SHERIFF'S DEPARTMENT; NEIL WILLIAMSON, individually and in his official capacity as Sheriff of Sangamon County; TERRY DURR, individually and in his official capacity as Superintendent of Sangamon County Jail; and SANGAMON COUNTY,<br><br>    Defendants. | Law No. 09-3116-SEM-BGC |

MOTION FOR SUMMARY JUDGMENT

NOW COME the Defendants, STEPHEN CULLINAN, M.D. and HEALTH PROFESSIONALS, LIMITED, by their attorney, THERESA M. POWELL, of HEYL, ROYSTER, VOELKER & ALLEN, and for their Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 state:

I.  INTRODUCTION

The Plaintiff in this case has filed a Second Amended Complaint alleging claims of deliberate indifference as well as medical malpractice claims against the Defendants. Defendants now bring this Motion for Summary Judgment as it pertains to the deliberate indifference claims against Defendants Cullinan and HPL.

Plaintiff's Second Amended Complaint sets forth a cause of action in Count I against Dr. Cullinan for deliberate indifference. The Plaintiff alleges that Plaintiff's decedent, Maurice Burris,

had a need of frequent vital sign monitoring, laboratory tests, radiological services and evaluation by a surgeon in order to avoid serious jeopardy to his health. Plaintiff further alleges that Dr. Cullinan knew that the only way that any of these services listed could be provided to Maurice Burris was to transfer him to a local hospital for evaluation and treatment.

There are no questions of fact as it relates to the necessary elements to support a cause of action for deliberate indifference to a serious medical need. The facts are undisputed that at no time did Dr. Cullinan subjectively feel that Mr. Burris needed to be sent to the hospital and deliberately chose not to do so. At best, the allegations in Count I mirror those of Count II and state nothing more than a claim for medical malpractice.

Likewise, Count III of Plaintiff's Second Amended Complaint alleges that HPL and Dr. Cullinan adopted a policy that a detainee could not be moved to a local hospital unless it was a "true emergency". Plaintiff suggests that Defendant Cullinan deliberately failed to treat Mr. Burris by sending him to the hospital because of this policy. Plaintiff has no facts to support the allegations set forth in Counts I and III of his complaint. Accordingly, Defendants bring this Motion for Summary Judgment.

## II.  UNDISPUTED STATEMENTS OF FACT

1. HPL's contract with the County began on December 1, 2007. (Exhibit 1).

2. Dr. Cullinan was first contacted regarding Maurice Burris on December 2, 2007, sometime around 9:38 a.m. Lee Anne Brauer is documented as having relayed complaints and symptoms to Dr. Cullinan. (Exhibit 8).

3. Dr. Cullinan ordered a lab to check urine ketones, start Benadryl 75 mg, Mylanta, and Zantac and ordered that the patient be moved to Medical Unit 4 for monitoring.  (Exhibits 8 and 9).

4. Mr. Burris' medical record suggests that Dr. Cullinan was contacted again regarding the patient's condition at 17:15 on December 2, 2007.  (Exhibit 10).

5. At 17:15 Dr. Cullinan advised the nursing staff to repeat the medications and that he would see the patient in the morning.  (Exhibit 10).

6. Dr. Cullinan came to the Sangamon County Jail to see Maurice Burris personally on December 3, 2007, at 7:00 a.m.  (Exhibit 10).

7. Dr. Cullinan saw Maurice Burris on this one occasion during his incarceration.  (Exhibit 10).

8. On December 3, 2007, Dr. Cullinan conducted a personal examination of the patient.  (Exhibit 10).

9. Following his examination of the patient on December 3, 2007, Dr. Cullinan ordered to continue the medications previously ordered for 7 days and to return to call (RTC) in 3 days and ordered the urine ketone test.  (Exhibit 10).

10. Following Dr. Cullinan's assessment of Maurice Burris, he made no suggestion or indication or notation suggesting he believed Mr. Burris required hospitalization.  Exhibit 10).

11. Dr. Cullinan did not believe Mr. Burris medically required a transfer to the hospital.  (Exhibit 2, page 81, lines 3-9; Exhibit 10).

12. The medical records suggest that Dr. Cullinan was contacted by Lee Anne Brauer on December 4, 2007, around 6:45 a.m. at which time she documented that Dr. Cullinan was aware of all vital signs and that he gave orders. (Exhibit 11).

13. After 6:45 a.m. there is no evidence to suggest that Dr. Cullinan was given any additional information regarding the status of Mr. Burris. (Exhibit 11).

14. No custom, policy or practice of HPL caused any of the medical providers in this case to be deliberately indifferent. Any HPL policies which require contact with a physician prior to sending a patient to an outside hospital played no role in the care and treatment of Maurice Burris as no one at the County Jail ever sought to send Mr. Burris to an outside hospital. (Exhibit 3, page 69, lines 8-11; Exhibit 4, page 62, lines 15-24 and page 63, lines 1-8).

15. Dr. Cullinan believed that the patient suffered from possible muscle wall pain with dyspepsia. (Exhibit 2, page 99, lines 14-19).

16. Dr. Cullinan is not aware of any instances where a member of medical staff at the Sangamon County Jail wished to send the patient out for emergency treatment wherein he or any other physician employed by HPL refused to grant that permission. (Exhibit 5, page 85, lines 3-11).

17. Mr. Burris was sent to St. John's Hospital by Sangamon County Jail staff on December 4, 2007. (Exhibit 12).

18. No one contacted Dr. Cullinan to obtain authority to send Mr. Burris out prior to doing so. (Exhibit 3, pages 68 and 69).

19. Based on the signs and symptoms that presented even on December 4, 2007, the patient's illness was not precisely identifiable. (Exhibit 6, page 29, lines 4-13).

20. The Plaintiff's own expert indicates that he could not have made a diagnosis of perforated ulcer based upon the patient's presentation of complaints of pain and abnormal vital signs because those findings can be indicative of a lot of different diseases. (Exhibit 6, page 29, lines 4-13).

21. There is nothing in the medical records or the evidence in this case to indicate that Dr. Cullinan believed the patient was suffering from an infection when he saw him on December 3, 2007. (Exhibit 7, page 138, lines 13-24 and page 139, lines 1-5).

22. Dr. Stern is not going to testify that he believes Dr. Cullinan intentionally lied on the record. (Exhibit 7, page 141, lines 10-21).

23. It is Dr. Stern's opinion that Dr. Cullinan estimated respirations, not that he found them to be 45 and wrote down 16. (Exhibit 7, page 142, lines 10-14).

24. Even according to Plaintiff's expert, Dr. Stern, there was no evidence in the materials to lead him to believe that Dr. Cullinan fabricated the information. (Exhibit 7, page 142, lines 15-18).

25. No one at the Sangamon County Jail tried to send any patients out (to a hospital), including Mr. Burris, on December 1, 2007. (Exhibit 3, page 68, lines 18-21).

26. No one at the Sangamon County Jail tried to send any patients out (to a hospital), including Mr. Burris, on December 2, 2007. (Exhibit 3, page 68, lines 22-24).

27. No one tried to send anyone from the Sangamon County Jail to the hospital on December 3, 2007. (Exhibit 3, page 69, lines 1-3).

28. Lee Anne Brauer never had any conversations with Dr. Cullinan discussing whether or not to send anyone out on December 1, 2 or 3, 2007. (Exhibit 3, page 69, lines 4-7).

29. The policy referenced in Plaintiff's Complaint suggesting that jail personnel contact HPL before sending patients out never came into play between December 1st and December 3rd of 2007. (Exhibit 3, page 69, lines 8-11).

30. When Mr. Burris was sent out on December 4, 2007, neither Lee Anne Brauer nor anyone else contacted HPL first before sending the patient out. (Exhibit 3, page 69, lines 12-16).

31. Lee Anne Brauer contacted 9-1-1 first. (Exhibit 3, page 69, lines 17-18).

32. Someone at HPL was notified later. (Exhibit 3, page 69, lines 19-21).

### III. LEGAL ARGUMENT

A. Summary Judgment Standard

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. In evaluating a motion for summary judgment, the court must look beyond the pleadings and assess the proof to determine whether or not there is a genuine need for a trial. If defendants meet their burden in showing there is an absence of evidence to support plaintiff's claim, plaintiff must demonstrate by affidavit, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25, 106 S.Ct. 254, 91 L.Ed.2d 265 (1986). In determining and evaluating a motion for summary judgment, the court views the evidence in

the light most favorable to the opposing party and draws all justifiable inferences in his favor. A mere scintilla of evidence in support of plaintiff's position is not sufficient to create a genuine issue of material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Federal Rule of Civil Procedure 56(c)*; *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). In the instance where there is an absence of evidence to support a non-moving party's case, the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See*, *Celotex*, 477 U.S. at 325; *see also*, *Federal Rule of Civil Procedure 56(e)*; *Outlaw*, 259 F.3d at 837. A non-moving party may not rest on its pleadings, but must demonstrate that there is some admissible evidence that would support his or her position. *Tolle v. Carroll Touch, Inc.*, 23 F.3d 174, 178 (7th Cir. 1994).

Summary judgment is the "put up or shut up" moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events. *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2000). A party opposing summary judgment bears the burden to respond, not simply by resting on the pleadings, but setting out specific facts showing a genuine issue for trial. *Federal Rule of Civil Procedure 56(e).*

Any affidavits used to refute the facts or to establish the facts must be based on the personal knowledge of the affiant. *Federal Rule of Civil Procedure 56(e)*. Inferences and opinions may not be based on flights of fancy, speculations, hunches, intuitions or rumors remote from that experience. *Visser v. Packer Eng. Associates, Inc.*, 924 F.2d 655, 659 (7th Cir. 1991).

B.  Deliberate Indifference

   1.  HPL Is Entitled To Summary Judgment As Plaintiff Has No Evidence To Establish That A Custom, Policy Or Practice Of HPL Lead To Deliberate Indifference To Maurice Burris' Serious Medical Needs

A governmental entity is liable for damages under Section 1983 only if the Plaintiff can show that the alleged constitutional deprivation occurred as a result of an official custom, policy or practice. *Monell v. Dept. of Social Services*, 436 U.S. 658, 692 (1978).

Like a municipality, a private corporation can only be held liable for deliberate indifference if the injury alleged is the result of a custom, policy or practice. *Johnson v. Dossey*, 515 F.3d 778 (7th Cir. 2008) citing *Woodward v. Correctional Medical Services*, 368 F.3d 917, 927 (7th Cir. 2004).

These types of claims normally take one of three forms: (1) an official policy adopted and promulgated by its officers; (2) a widespread practice that although not authorized by written law or expressed municipal policy is so permanent and well settled as to constitute a usage or custom with the force of law; or (3) a constitutional injury was caused by a person with final policy-making authority. *Thomas v. Cook County Sheriff's Department*, 588 F.3d 445, 453 (7th Cir. 2009).

In this case, the Plaintiff cites to a written policy on the part of HPL which allegedly requires those with whom it contracts to contact HPL prior to sending patients to the hospital.

There is admittedly much dispute between the parties regarding the meaning of this policy. HPL takes the position that this policy is similar to any insurance policy which would require notification of patients being sent to a hospital so that the patient can be properly monitored and so payments can be made to the appropriate medical entity. Plaintiff suggests that the policy prohibits those on site from being sent out for medical care without first coordinating or communicating with an HPL person.

The interpretation of the policy is irrelevant. The policy at issue played no role in the care and treatment provided to Mr. Burris between December 1st and December 4th of 2007. At no point in time between those dates did anyone at the jail ever make a request to Dr. Cullinan or anyone at HPL to send Mr. Burris to the hospital. Regardless of the interpretation of the policy, it never came into play as is affirmatively stated by Lee Anne Brauer, the medical director of the facility. (Undisputed Statement of Facts (hereafter USF) 25, 26, 27, 28 and 29).

In addition, when Mr. Burris collapsed on December 4, 2007, Mr. Burris was sent by Sangamon County Jail personnel to the hospital without contacting HPL before sending him to the hospital. (USF 30). These policies are contractual terms between the parties, the County and HPL. There is no evidence to indicate that the referenced policies of HPL were intended to be used to prevent care and treatment for patients/inmates incarcerated at the Sangamon County Jail.

The Plaintiff must establish that HPL imposed a custom, policy and practice which lead to the death of Maurice Burris. No witness in this case has provided any testimony to suggest that a custom, policy and practice lead to any injury to Mr. Burris. The only custom, policy or practice

referenced by the Plaintiff comes in a repeated allegation that HPL had a policy requiring the onsite medical providers to contact a physician such as Dr. Cullinan before sending a patient out to an outside facility unless it was an emergent situation. The testimony in this case has been consistent that no one ever sought to send Mr. Burris out to an outside hospital. The policy referenced by the Plaintiff is irrelevant as it never came into play. The fact the Plaintiff seeks to twist the meaning of the terms of the policies of HPL to suggest some purpose in harming the patient when in fact the policy relates to requirements in communicating between the County and HPL. Whether or not that communication takes place or would have taken place in this case is irrelevant as the policy never came into play with Mr. Burris as no one ever sought to send him out. The only time that Mr. Burris was sent to an outside hospital was on December 4, 2007. At that time, the County employees, including Lee Anne Brauer, recognized that this was an emergency and sent him to an outside hospital. (USF 30). No one contacted a physician of HPL first. (USF 30). The patient was sent out and contact was made later consistent with HPL's policies.

There has been no testimony to indicate that any decisions made by Dr. Cullinan were in furtherance of this policy or any custom, policy or practice of HPL. Accordingly, Defendants pray that HPL be granted summary judgment as any and all allegations against HPL pursuant to Section 1983 are purely speculative.

No policy of HPL hindered any actions on the part of any medical provider.

2. HPL May Not Be Held Liable Under Section 1983 For The Acts Or Omissions Of Its Employees

It has long been established that there is no respondeat superior liability under Section 1983. This applies in situations where the employer is either an individual or private corporation. *Rodriguez v. Plymouth Ambulance Service*, 577 F.3d 816, 822 (7th Cir. 2009) citing *Johnson v. Dossey*, 515 F.3d 778 (7th Cir. 2008).

Like public municipal corporations, a private corporation may not be held vicariously liable under Section 1983 for its employees' deprivations of others' civil rights. *Id.* citing *Iskander v. Village of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982); *see also*, *Jackson v. Illinois Medi-Car, Inc.*, 300 F.3d 760 (7th Cir. 2002).

Allegations in Count III of Plaintiff's Second Amended Complaint specifically assert that Plaintiff intends to seek liability against HPL for the acts of Dr. Cullinan which Plaintiff alleges were negligent.

In addition, the Plaintiff alleges that HPL is responsible for the acts or omissions of its agent, Dr. Cullinan. These allegations are akin to respondeat superior or vicarious liability claims. Plaintiff fails to even allege a cause of action against HPL based upon a custom, policy or practice at issue in this case. The Plaintiff alleges that Dr. Cullinan adopted an implemented policy that put detainees such as Maurice Burris at risk. However, Plaintiff presents no evidence to establish how any HPL policy played a role in determining the care and treatment for Mr. Burris. Again, the only policy referenced relates to the HPL policy which requires communication between the County and HPL when sending individuals to an outside hospital. Plaintiff has no evidence to indicate that this policy came into place as it pertains to Maurice Burris.

> 3.  Dr. Cullinan Is Entitled To Summary Judgment As It Pertains To Plaintiff's Claims Of Deliberate Indifference

Prison officials may be sued for violating an inmate's right to medical care if the official is deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104-105 (1976). In order to support such a cause of action, the Plaintiff must prove both that he has a serious medical need which has been defined as a condition that a doctor has recognized as needing treatment or one for which the necessity of treatment is obvious to a layperson. *Johnson v. Snyder*, 444 F.3d 579, 584-585 (7th Cir. 2006). Although such a condition does not have to be life threatening, the standard for Eighth Amendment violations suggests a condition of urgency that may result in degeneration or extreme pain. *Champs v. Armstrong*, 143 F.3d 698, 702 (2nd Cir. 1998).

To begin, it would appear that the Plaintiff's condition was serious given the fact that he died. However, this applies a retrospective assessment of what constitutes a serious medical need and therefore would not be appropriate, as judgment in hindsight is always twenty-twenty. In this case, it is not disputed that Plaintiff had complaints which prompted a physician, Dr. Cullinan, to see him. Whether or not his condition at all times is a serious medical need may be in dispute. However, for purposes of this motion, counsel will assume that the matter constituted a serious medical need at all relevant times.

Assuming that the Plaintiff's condition is of the nature protected by the Eighth Amendment, the Plaintiff must produce some evidence that Defendant Cullinan was deliberately indifferent to the Plaintiff's need for treatment. In order to establish deliberate indifference, the

Plaintiff must show that Dr. Cullinan was aware that Mr. Burris needed medical treatment and disregarded the need. *Forbes v. Edgar*, 112 F.3d 262, 266 (7th Cir. 1997).

In this case, it is undisputed that Dr. Cullinan was contacted no earlier than December 2, 2007, regarding Mr. Burris' condition. (USF 2). He ordered medication for the patient on December 2nd and reordered that medication when he was contacted a second time. (USF 5). On the evening of December 2nd, he indicated that he would come in to see the patient and followed through on his promise by coming to see the patient on December 3, 2007, at 7:00 a.m. (USF 6). Dr. Cullinan performed an assessment of the patient and ordered a certain course of treatment. (USF 8, 9).

The Plaintiff was diagnosed with a perforated ulcer on the late morning hours of December 4, 2007, more than a day after Dr. Cullinan had personally examined him.

In the context of medical professionals, it is important to emphasize that medical malpractice, negligence or even gross negligence does not equate to different indifference. *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006); *see also*, *Dunigan, ex rel. Nyman v. Winnebago County*, 165 F.3d 587, 592 (7th Cir. 1999). Mere dissatisfaction or disagreement with the doctor's course of treatment is generally insufficient. *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996). It is not enough to show that a doctor should have known that surgery was necessary. The Plaintiff must prove that the doctor knows that surgery is necessary and consciously disregarded that need in order to be held deliberately indifferent. *Johnson v. Doughty* at 1013. A cause of action for medical negligence does not become a constitutional violation simply because the patient plaintiff is incarcerated.

There is nothing in this record to indicate that Dr. Cullinan believed that Mr. Burris suffered from a perforated ulcer at the time that he saw him.  The Plaintiff complains that Dr. Cullinan should have provided a different course of care, should have sent him to the hospital, and should have known that his signs and symptoms constituted a condition which required evaluation at a hospital.  However, this is not the standard for deliberate indifference.  All of the Plaintiff's allegations and evidence may be sufficient to create a question of fact as it pertains to a claim of medical malpractice.  However, evidence of alleged medical malpractice even gross negligence is insufficient to establish deliberate indifference.  The Plaintiff's own experts have testified that they did not believe Dr. Cullinan intentionally harmed the Plaintiff.  Even Dr. Apstein testified that he would not expect a physician to have known that the symptoms exhibited by Mr. Burris definitively diagnosed a perforated ulcer.  The expert indicates that in his opinion, the patient should have received further evaluation.  This is not sufficient to establish a cause of action or a basis for a claim of deliberate indifference.  To the contrary, Dr. Cullinan believed the patient suffered from an array of symptoms that did not lead him to a particular diagnosis or conclusive diagnosis of any one condition, but believed the patient may be suffering from one of a number of mild conditions for which the patient was treated with medication and placed in the health care unit for monitoring.  None of the actions taken by Dr. Cullinan suggest deliberate indifference on his part.

At no time did anyone from the jail suggest to Dr. Cullinan that this patient needed to be transferred to a hospital or that they were incapable of taking care of him.

As it pertains to Plaintiff's claim of deliberate indifference, the Plaintiff has the burden of establishing that Dr. Cullinan knew that the Plaintiff suffered from a serious medical need and intentionally chose not to treat it. There simply is no evidence to support such a claim.

## IV. CONCLUSION

Defendant HPL is entitled to summary judgment as to Count III as Plaintiff has presented no factual evidence to create a genuine issue of material fact with respect to the required elements of a Section 1983 claim against the corporation. To the extent HPL had customs, policies and practices, there is no evidence that any of those customs, policies or practices came into play, or followed or directly led to the death of Maurice Burris.

As it pertains to Dr. Cullinan, the Plaintiff presents no evidence to suggest that Dr. Cullinan's behavior was sufficient to establish any damage of claim of deliberate indifference. The Plaintiff's evidence lacks with respect to the subject of element in that there is no evidence that Dr. Cullinan believed that the patient suffered from a serious medical condition which put him at risk of substantial harm. Moreover, there is no evidence that Dr. Cullinan was deliberately indifferent to the medical needs of Mr. Burris as he came to the jail to evaluate him personally, assessed him personally and provided a course of care. Disputes concerning the appropriate course of care for a given set of symptoms are appropriate to argue negligence, but are not a sufficient basis for a deliberate indifference claim.

WHEREFORE, Defendants pray that this Court enter summary judgment in favor of the Defendants and against the Plaintiff, plus costs of suit as it pertains to the 1983 claims.

Defendants pray that this Court would not retain jurisdiction as it pertains to the medical malpractice claims which are based on state law only.

Respectfully Submitted,

*s/ Theresa M. Powell*
Attorney for Defendants Cullinan and HPL
IL ARDC #:  6230402
Heyl, Royster, Voelker & Allen
Suite 575, PNC Bank Building
One North Old State Capitol Plaza
P. O. Box 1687
Springfield, IL  62705-1687
217.522.8822 Phone – Ext. 235
217.523.3902 Fax
tpowell@heylroyster.com

PROOF OF SERVICE

I hereby certify that on August 26, 2011, I electronically filed the foregoing instrument, MOTION FOR SUMMARY JUDGMENT, with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

| | | |
|---|---|---|
| Alexandra de Saint Phalle | alex@lprpc.com | Attorneys for Plaintiff |
| Douglas J. Quivey | doug@lprpc.com | |
| Joseph J. Madonia | joemadonia@aol.com | |
| | | |
| Andrew M. Ramage | aramage@hinshawlaw.com | Attorneys for Defendants Lee Anne Brauer; Sangamon County Sheriff's Department; Neil Williamson; Terry Durr; Sangamon County |
| John A. Mehlick | jmehlick@hinshawlaw.com | |
| J. William Roberts | broberts@hinshawlaw.com | |

and I hereby certify that on August 26, 2011, I have mailed by United States Postal Service the foregoing instrument, MOTION FOR SUMMARY JUDGMENT, to the following non-CM/ECF participants:

None

*s/ Theresa M. Powell*
Theresa M. Powell

TMP/cs (R7856)

16770641_1.DOCX